IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESNO ROCK TACO, LLC, et al., | CASE NO. 1:11-cv-00622-LJO-SKO |
| Plaintiffs, | **ORDER ON DEFENDANTS BRENDAN RHAMES' AND THE CITY OF FRESNO'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| BEN RODRIGUEZ, et al., | (Doc. 55) |
| Defendants. | |

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**I. INTRODUCTION**

Plaintiffs Fresno Rock Taco, LLC ("Fresno Rock Taco"); Zone Sports Center, LLC ("Zone Sports Center"); The Fine Irishman, LLC ("The Fine Irishman"); and Heidi Barbis as guardian *ad litem*

1

for Claire Barbis (collectively "plaintiffs") bring this civil rights action, pursuant to 42 U.S.C. § 1983. Plaintiffs assert Fourth and Fourteenth Amendment claims against California Department of Insurance Fraud employee, Ben Rodriguez ("Mr. Rodriguez"), and Fresno Police Detective Brendan Rhames ("Det. Rhames"). Plaintiffs also assert a *Monell* claim against the City of Fresno ("City"). Now before the Court is Det. Rhames and the City's motion for summary judgment.[1] Plaintiffs oppose the motion. For the reasons discussed below, this Court GRANTS defendants' motion.

## II. BACKGROUND

**A. Facts**

On May 27, 2009, Mr. Rodriguez, a criminal investigator for the California Department of Insurance Fraud, sought a search warrant for four locations: two businesses, a storage building, and the Barbis' family home. Mr. Rodriguez believed that the searches would uncover evidence of insurance fraud, various types of workers' compensation fraud, and unemployment insurance code violations. The warrant was signed by a Superior Court Judge, based upon a Statement of Probable Cause submitted by Mr. Rodriguez. The Statement of Probable Cause contained information attributed to Det. Rhames, a detective with the Fresno Police Department. The search warrant sought to seize various pieces of electronic equipment and various types of business records.

On May 28, 2009, at approximately 7:30 a.m., the search warrant was executed at all four locations. Milton and Heidi Barbis and their three year old daughter Claire were at their home when officers arrived. Mrs. Barbis was blow-drying her hair when she heard one of the officers tell her to get dressed and come out. After hearing the directive, Mrs. Barbis put on her bathrobe, took Claire out of bed, and carried Claire into the livingroom. Mr. Barbis was in the livingroom with Mr. Rodriguez and Det. Rhames. The five then moved into the kitchen. Once in the kitchen, one of the officers asked Mrs. Barbis to take Claire and leave but she chose to stay. The trio stayed in the home during the entirety of the search. At one point during the search, Det. Rhames left his flashlight on the kitchen table. An unidentified officer referred to the light as a kill stick and explained that when one hits someone over the head with it, they die. Det. Rhames visited all four locations during the execution of the search

---

[1] Det. Rhames and the City will be referred to collectively as "defendants." Mr. Rodriguez is not a party to this motion.

2

warrant.

**B. Procedural History**

On April 16, 2011, plaintiffs commenced the instant action in this Court.[2] (Doc. 1). In their first amended complaint, they alleged three causes of action. First, they alleged a Fourth Amendment unreasonable search and seizure claim against Mr. Rodriguez and Det. Rhames. Next, they alleged a Fourteenth Amendment due process claim against Mr. Rodriguez and Det. Rhames. Finally, they alleged a *Monell* claim against the City.

Now before the Court is Det. Rhames and the City's motion for summary judgment. (Doc. 55). Defendants contend that the LLCs are subject to dismissal under bankruptcy laws. In addition, defendants assert that Det. Rhames is entitled to qualified immunity. Defendants further argue that because Det. Rhames is entitled to qualified immunity, the City is also entitled to dismissal of all claims against it as a matter of law. Plaintiffs filed an opposition to defendants' motion[3] (Doc. 58) to which defendants replied (Doc. 62). This Court found the motion suitable for a decision without oral argument, pursuant to Local Rule 230(g), and vacated the February 25, 2013, hearing date. (Doc. 57).

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id*.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[2] Plaintiffs originally included Milton and Heidi Barbis but all of their claims were previously dismissed by this Court. (Doc. 35).

[3] In plaintiffs' opposition, they argue that Det. Rhames is not entitled to qualified immunity on their Fourth Amendment excessive force claim. This Court is perplexed as to why this analysis is included in the opposition as plaintiffs did not raise an excessive force claim in their complaint.

3

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). The nonmoving party must go beyond the allegations set forth in its pleadings. *See* FED. R. CIV. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**IV. DISCUSSION**

**A. LLCs**

Defendants contend that the LLCs are subject to dismissal under bankruptcy laws because the owners of the LLCs filed for bankruptcy and failed to list the instant lawsuit in their bankruptcy petitions.

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not

raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001); *see also Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action).

Here, Fresno Rock Taco and The Fine Irishman are judicially estopped from asserting their causes of action in the instant case because the undisputed facts show that each is wholly owned by individuals that filed for bankruptcy and did not disclose the causes of action. Mr. Barbis' deposition testimony and a declaration prepared for a case in the Northern District[4] provides that Mr. Barbis is the sole owner of Fresno Rock Taco. (Doc. 55-4, p. 3, RT p. 16; Doc. 55-16, p. 5). Mr. Barbis filed for bankruptcy and did not disclose the causes of action brought by Fresno Rock Taco in the instant case to his creditors. Thus, Fresno Rock Taco is judicially estopped from pursuing its claims in this Court. *See Hamilton*, 270 F.3d at 783. Mr. Barbis' declaration provides that he did not own 100% of Fresno Rock Taco, he "owned 100% of the equity capital but other investors owned 90% of the total capital investment." (Doc. 58-6, p. 6 ¶ 39). The fact that Mr. Barbis owned 100% of the equity in the company shows that he was the sole owner of the company.

With regard to The Fine Irishman, the company's response to the City's interrogatories provide that John Benjamin is the sole owner of the company. (Doc. 55-5, p. 3:1-6). Mr. Benjamin's bankruptcy petition also lists him as 100% sole owner of the company. (Doc. 55-17, p. 3). Mr. Benjamin did not disclose the instant claims in his bankruptcy petition nor is there any evidence to show that he disclosed the instant claims to his creditors. Thus, The Fine Irishman is judicially estopped from asserting its claims in this court. *See Hamilton*, 270 F.3d at 783. The Fine Irishman argues that the fact Mr. Benjamin did not disclose its current claims to Mr. Benjamin's creditors is not relevant because Mr. Benjamin filed for bankruptcy, not The Fine Irishman. (Doc. 58-1, p. 2). It is true that Mr. Benjamin filed for bankruptcy and not The Fine Irishman however, because Mr. Benjamin is the sole owner of the company he should have disclosed the fact that The Fine Irishman possessed a potentially valuable asset,

---

[4] *Red Head, Inc. v. Fresno Rock Taco, LLC*, Case No. CV08-5703 EMC.

the claims in this case. Accordingly, defendants' motion for summary judgment on the claims brought by Fresno Rock Taco and The Fine Irishman is GRANTED.

With regard to Zone Sports Center, there is a genuine dispute as to whether it is judicially estopped from bringing its claims. It is undisputed that Sphere Properties owns 89.79% of Zone Sports Center and that Granite Park Investors owns the other 10.21%. (Doc. 58-1, p. 3 ¶ 7, 11). It is further undisputed that Mr. Barbis owns 22% of Sphere Properties and failed to disclose Zone Sports Center's claims to his creditors when he filed for bankruptcy. It is also undisputed that Mr. Benjamin owns 16.6% of Granite Park Investors and Howard Young owns 12% of the company. It is further undisputed that both Mr. Benjamin and Mr. Young failed to disclose Zone Sports Center's claims to their creditors when they filed for bankruptcy. Although it is undisputed that three of Zone Sports Center's owners failed to disclose Zone Sports Center's claims to their creditors when they filed for bankruptcy it is unclear as to who the other investors are and whether they are judicially estopped from bringing Zone Sports Center's claims. Accordingly, Zone Sports Center is not judicially estopped from bringing its claims in the instant action.

**B. Qualified Immunity**

Whether an officer is "entitled to summary judgment on the basis of qualified immunity depends on a two-step inquiry." *Ganwich v. Knapp*, 319 F.3d 1115, 1119 (9th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, whether "the facts alleged show the officer['s] conduct violated a constitutional right." *Id*. Second, if the officer violated a constitutional right, whether the right was "clearly established" when viewed in the context of the case. *Id*.

**1. Claire Barbis' Fourth Amendment Seizure Claim**

Defendants contend that Det. Rhames is entitled to qualified immunity in relation to the alleged seizure of Claire Barbis because the undisputed facts show that the child was never seized. Thus, her Fourth Amendment rights were not violated.

The Fourth Amendment protects against unreasonable searches and seizures. "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). A person is "seized" within the meaning of the Fourth Amendment if, "in view of all of the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave." *Id*. at 554.

Here, the undisputed facts show that Claire Barbis was never seized within the meaning of the Fourth Amendment. Mrs. Barbis' deposition testimony provides that during the execution of the search warrant officers told her to leave with Claire but she chose to stay. (Doc. 55-22, p. 4). In her declaration, she explains that when Det. Rhames told her to leave she asked if she could change out of her bathrobe, make a phone call, or drive her car and he responded that she could not. (Doc. 58-5, p. 3 ¶ 8). When she asked the officers how she was supposed to leave the house in a bathrobe, without using her car, and without calling anyone, they just looked at her and smiled. (*Id*.). The officers told her that she could stay around the outside of the home but without clothes or shoes, Mrs. Barbis made the decision to stay inside the home with Claire. (Doc. 58-5, p. 3 ¶ 9). Because Det. Rhames told Mrs. Barbis to leave with Claire and another officer suggested that the duo stay around the outside of the home, a reasonable person would have believed that she was free to leave.

To the extent plaintiffs contend that Claire did not feel free to leave because she felt threatened by an unknown officer's reference to a flashlight as a "kill stick," this is insufficient to show that Det. Rhames violated Claire's Fourth Amendment rights because it is undisputed that Det. Rhames did not make the comment. In Mrs. Barbis' deposition, she testified that Det. Rhames left his flashlight on the kitchen table. (Doc. 55-8, p. 7). She further testified that an hour later a bald officer, that was not Det. Rhames, stated, "You know what they call that?" (Doc. 55-8, p. 8:5-6). Mrs. Barbis responded, "A flashlight." (Doc. 55-8, p. 8:7). The officer stated, "No, it's called a kill stick. Because when you hit somebody over the head with it, they die." (Doc. 55-8, p. 8:8-10).

In Mrs. Barbis' declaration she reiterates the story and explains that Claire became hysterical and began crying after the officer made the comment. (Doc. 58-5, p. 4:18). Her declaration further provides that upon further reflection, she is unsure as to which officer made the comment but that Det. "Rhames is partially at fault because he purposely took out the flashlight, placed it on the table and left it there for a reason." (Doc. 58-5, p. 4:23-25). Viewing the evidence in the light most favorable to the nonmoving party, it is undisputed that Mrs. Barbis is unsure as to which officer made the comment. This is insufficient to show that Det. Rhames was involved in the alleged Fourth Amendment violation. In addition, the mere fact that Det. Rhames placed his flashlight on the table is insufficient to show that he

placed it on the table in order to threaten Claire.

**2. Claire Barbis' Fourth Amendment Judicial Deception Claim**

Defendants argue that Det. Rhames is entitled to qualified immunity with regard to the issuance of the search warrant because there is insufficient evidence to show that Det. Rhames knowingly or recklessly misstated a material fact in his affidavit in support of the search warrant.

False statements cannot be used to obtain a warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To support a § 1983 claim in this regard, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). A plaintiff must make a substantial showing of deliberate falsehood or reckless disregard for the truth. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). The materiality element requires the plaintiff to demonstrate that "the magistrate would not have issued the warrant with false information redacted." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997). The Court determines the materiality of alleged false statements or omissions. *Butler*, 281 F.3d at 1024.

Several statements in Mr. Rodriguez's affidavit in support of his request for the search warrant are attributed to Det. Rhames. Three of Det. Rhames' statements are based on information from Alex Costa. Plaintiffs contend that Det. Rhames recklessly disregarded the truth when he relied on Mr. Costa's statements because Det. Rhames did not investigate Mr. Costa's allegations. Even if Det. Rhames recklessly disregarded the truth by relying on Mr. Costa's statements, the statements were not material to the finding of probable cause.

Det. Rhames received three pieces of information from Mr. Costa: (1) Cabo Wabo had only four 42-inch televisions and not nineteen (Doc. 55-14, p. 9:20-21); (2) some of the televisions that were reported stolen were given to painters as payment for their services (Doc. 55-14, p. 9:21-23); and (3) Mr. Barbis made comments that he would hide equipment in storage so the equipment would not get repossessed (Doc. 55-14, p. 10:2-3). These statements were not material to the finding of probable cause because statements (2) and (3) were corroborated by others in the affidavit. Roger Brown confirmed that

Mr. Barbis paid several painters with television sets. (Doc. 55-14, p. 9:24-26). In addition, a former food server for the Public House confirmed that Mr. Barbis made comments that he kept equipment in storage so the equipment would not get repossessed. (Doc. 55-14, p. 10:4-6).

Moreover, the television sets were not the only items discussed in support of the insurance fraud allegations. The insurance fraud section of the statement of probable cause contained allegations regarding $200,000 worth of construction materials and twelve show lights. In addition, the statement of probable cause is a twenty-five page document that contains allegations related to various types of workers' compensation insurance fraud and unemployment insurance code violations in addition to the insurance fraud allegations. Thus, the probable cause determination did not hinge on the three statements made by Mr. Costa. *See United States v. Feeney*, 984 F.2d 1053, 1055 (9th Cir. 1993) (the Court employs a "totality of the circumstances" test to determine whether a search warrant is supported by probable cause). Because Mr. Costa's statements were not material to the finding of probable cause, there is no Fourth Amendment violation.

**3. Claire Barbis' Fourth Amendment Unreasonable Search Claim**

Plaintiffs contend that Det. Rhames' conduct exceeded the scope of the search warrant. Specifically, they argue that the search of the bathrooms, bedrooms, playroom, and kitchen cupboards of the Barbis' home exceeded the scope of the warrant.

The Fourth Amendment prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004). A valid warrant must describe particularly the places that officers may search and the types of items that they may seize. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). However, the search warrant need only be "reasonably specific, rather than elaborately detailed." *Mann*, 389 F.3d at 877. "A warrant cannot pass constitutional muster if the scope of the related search or seizure exceeds that permitted by the terms of the validly issued warrant." *Al-Kidd v. Ashcroft*, 598 F.3d 1129, 1134 n.3 (9th Cir. 2010).

When considering "[w]hether a search exceeds the scope of a search warrant," the court must engage in "an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir.), *amended by* 298 F.3d 1021 (9th Cir. 2002); *accord United States v. Hurd*,

499 F.3d 963, 966 (9th Cir. 2007); *see also United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) ("In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution.").

On May 27, 2009, a Fresno County Superior Court Magistrate Judge issued a search warrant which authorized police officers to search two businesses, a storage building, the Barbis' family home, two vehicles registered to the Barbis', and any and all vehicles registered to Howard Young and Erica Weiss. (Doc. 55-14, p. 2-4; 33). The search warrant authorized officers to seize various pieces of electronic equipment and business records which included employment and payroll documents; receipts and disbursement records; accounting, financial asset, and liability records; customer documents; insurance documents; internal company correspondence; written polices and procedures; and computer equipment and devices. (Doc. 55-14, p. 4-7).

Plaintiffs argue that during the search of the Barbis' home the search of the bathrooms, Mr. and Mrs. Barbis' bedroom, Claire's bedroom, Claire's playroom, and the kitchen cupboards exceeded the scope of the search warrant. Plaintiffs' argument lacks merit. In *Ayers*, the police obtained a search warrant for an entire single family home based on the son's alleged drug activities. *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991). While searching the father's bedroom closet, the police located over $400,000, in cash which led to the father's conviction for income tax evasion. *Id*. at 1478. The father argued that the police exceeded the scope of the warrant by searching the entire home, including his bedroom over which his son did not have common control. *Id*. at 1480. The Ninth Circuit rejected this argument and held that "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was based on information regarding the alleged illegal activities of one of several occupants of a residence." *Id*.

Here, the Barbis' home is a single family home shared by Mr. and Mrs. Barbis and their daughter Claire. Mr. and Mrs. Barbis clearly had access to Claire's bedroom and playroom, the bathrooms, and the kitchen cupboards as they are all common areas of the home. In addition, these parts of the home were secure hiding places because most people do not store business records in these areas. *See id.* (noting that contraband can be hidden in any portion of a single family home and "[t]he most obvious place for the police to search would be the [suspect's] bedroom. Therefore any other portion of the

10

house would be a more secure hiding place."). Accordingly, the search of the Barbis' home did not exceed the scope of the warrant.

### 4. Claire Barbis' Fourteenth Amendment Deprivation of Liberty Claim

Plaintiffs allege that Claire Barbis was denied her Fourteenth Amendment right not to be subjected to loss of liberty without due process of law when she was confined by Det. Rhames.

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of liberty and property without due process of law. *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). The Due Process Clause confers both procedural and substantive rights. *Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) (en banc), *overruled on other grounds as stated in Crown Point Dev., Inc., v. City of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir. 2007). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of . . . due process, must be the guide for analyzing" the claim. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (referring to substantive due process) (internal quotation marks omitted). The Ninth Circuit has explicitly stated that "Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him." *Larson v. Neimi*, 9 F.3d 1397, 1401 (9th Cir. 1993).

Claire Barbis alleges that her Fourteenth Amendment rights were violated when she was confined by Det. Rhames. Because Claire Barbis alleges an illegal seizure claim, her due process claim is governed by the Fourth Amendment rather than general procedural and substantive due process standards. As discussed above, Det. Rhames did not violate Claire Barbis' Fourth Amendment rights. Accordingly, defendants are entitled to summary judgment on Claire Barbis' Fourteenth Amendment deprivation of liberty claim.

### 5. Zone Sports' Fourth and Fourteenth Amendment Claims

Defendants contend that Det. Rhames is entitled to qualified immunity with regard to the claims alleged by Zone Sports because Det. Rhames was not involved in the alleged constitutional violations.

Plaintiffs allege that Det. Rhames seized items from Zone Sports that were beyond the scope of the search warrant, returned seized equipment to an individual who had no legal right to the equipment, and deprived Zone Sports from its right to be secure from an unreasonable search and seizure in

violation of the Fourth Amendment. Plaintiffs also allege that Det. Rhames violated Zone Sports' Fourteenth Amendment rights by depriving it of property without procedural or substantive due process.

Defendants argue that Det. Rhames is entitled to qualified immunity with regard to the claims alleged by Zone Sports because there is insufficient evidence to show that Det. Rhames was involved in the alleged constitutional violations. It is undisputed that Det. Rhames visited all four locations on the day of the search (Doc. 55-24, p. 17) however, plaintiffs fail to set forth evidence to show that Det. Rhames actually participated in the constitutional violations alleged. *See Stefanchick*, 559 F.3d at 929 ("In order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in his favor.") (emphasis in original). Therefore, defendants are entitled to summary judgment on Zone Sports' Fourth and Fourteenth Amendment claims.

Based on the above analysis, this Court GRANTS defendants' motion for summary judgment on the claims against Det. Rhames.

**C. Municipal Liability**

Defendants contend that because Det. Rhames is entitled to qualified immunity, no constitutional violation exists and the City is entitled to the dismissal of all claims against it.

To establish municipal liability under *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), a plaintiff must first establish that the officer deprived him or her of a constitutional right. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Next, plaintiff must show that an official city policy, custom, or practice was the moving force behind the constitutional injury. *Monell*, 436 U.S. at 694.

Plaintiffs allege that Det. Rhames violated Claire Barbis and Zone Sports' Fourth and Fourteenth Amendment rights. This Court's above findings, that Det. Rhames did not violate Claire Barbis or Zone Sports' Fourth or Fourteenth Amendment rights, nullifies plaintiffs' *Monell* claim. *See Heller*, 475 U.S. at 799 (a plaintiff must first establish that the officer deprived her of a constitutional right). Accordingly, the City's motion for summary judgment on plaintiffs' *Monell* claim is GRANTED.

### V. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS defendants Brendan Rhames and the City of Fresno's motion for summary

judgment, and

2. DIRECTS the clerk to enter judgment in favor of Defendants Brendan Rhames and the City of Fresno and against plaintiffs Fresno Rock Taco, LLC; Zone Sports Center, LLC; The Fine Irishman, LLC; and Heidi Barbis as guardian *ad litem* for Claire Barbis.

IT IS SO ORDERED.

Dated:   **March 6, 2013**              /s/  **Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE