Douglas V. Thornton, Bar #154956
RUMMONDS | THORNTON | LAPCEVIC, LLP
1725 North Fine Avenue
Fresno, California 93727-1616
Telephone (559) 400-8999
Facsimile (559) 492-3385

Robert W. Branch, Bar #154963
William E. McComas, Bar # 261640
THORNTON LAW GROUP, P.C.
1725 North Fine Avenue
Fresno, California 93727-1616
Telephone (559) 400-8999
Facsimile (559) 492-3385

Attorney for: Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESNO ROCK TACO LLC, a California Limited Liability corporation; ZONE SPORTS CENTER, LLC, a California Limited Liability corporation THE FINE IRISHMAN LLC, a California Limited Liability corporation; MILTON BARBIS, an individual; HEIDI BARBIS, an individual; HEIDI BARBIS as guardian at litem for CLAIRE BARBIS, a minor;<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>BEN RODRIGUEZ, an individual; BRENDAN RHAMES, an individual; GEORGEANNE WHITE, an individual; THE CITY OF FRESNO, a California municipality; and DOES 1-100 inclusively<br><br>　　　　　　　　Defendants. | Case No.: 1:11-cv-00622-SKO<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER AND/OR PRETRIAL ORDER TO ALLOW PLAINTIFF TO DESIGNATE EXPERT** |

Plaintiff Zone Sports Center, LLC ("Plaintiff") respectfully requests that the court take judicial notice of the following facts and documents pursuant to Federal Rules of Evidence, Rule 201:

1   00035002.v1

Request for Judicial Notice in Support of Plaintiffs' Reply to Defendants' Opposition to Motion to Amend Scheduling Order and/or Pretrial Order to Allow Plaintiff to Designate Expert

1. The fact that the Social Security Administration, Office of Disability Adjudication and Review, issued a decision finding that Milton Barbis was disabled within the meaning of the Social Security Act from October 8, 2011 through August 31, 2014. A true and correct copy of the findings and written opinion of the Administrative Law Judge are attached hereto as Exhibit A and incorporated herein by this reference. Pursuant to Federal Rule of Evidence 201, subpart (b)(2), the court properly takes judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be questioned. The decision of an administrative agency is such a fact. *See PG & E v. Lynch*, 216 F.Supp.2d 1016, 1025 (N.D. Cal. 2002*); see also Merced Irrigation Dist. v. County of Merced*, 941 F.Supp.2d 1237, 1261-1262 (E.D. Cal. 2013) (records and reports of administrative bodies are proper subjects of judicial notice); *see also San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F.Supp.2d 719, 732 (N.D. Cal. 2011) (records, reports and other documents on file with administrative agencies are judicially noticeable).

                              Respectfully submitted

                              RUMMONDS, THORNTON & LAPCEVIC

Dated: December 30, 2015         By  /s/ Douglas V. Thornton
                                            DOUGLAS V. THORNTON
                                            Attorneys for the Plaintiffs

**Request for Judicial Notice in Support of Plaintiffs' Reply to Defendants' Opposition to Motion to Amend Scheduling Order and/or Pretrial Order to Allow Plaintiff to Designate Expert**

**EXHIBIT 1**

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

**IN THE CASE OF**  **CLAIM FOR**

Milton Peter Barbis   Period of Disability and Disability Insurance Benefits
(Claimant)

_____   _____
(Wage Earner)   (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

On October 5, 2012, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 1, 2008. The claim was denied initially on February 28, 2013, and upon reconsideration on January 9, 2014. Thereafter, the claimant filed a written request for hearing on March 5, 2014 (20 CFR 404.929 et. seq.). The claimant appeared and testified at a hearing held on August 6, 2015, in Fresno, CA. Cheryl R. Chandler, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Melissa Proudian, an attorney.

The claimant amended the alleged onset date of disability to January 1, 2009, through August 31, 2014. However, there is no medical evidence of record going back to the alleged onset date.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. On the disability onset date, the claimant did not meet the insured status requirements of the Social Security Act for a period of disability and disability insurance benefits, but did meet them for Medicare for Qualified Government Employees (MQGE), based on his job with State Center Community College. The claimant's earnings record shows that the claimant has acquired sufficient quarters of MQGE coverage to remain insured for Medicare benefits through June 30, 2014. Thus, the claimant must establish disability on or before that date in order to be entitled to Medicare.

After careful consideration of all the evidence, I conclude that the claimant was "disabled" within the meaning of the Social Security Act from October 8, 2011 through August 31, 2014. I also find that the MQGE insured status requirements of the Social Security Act were met as of the

See Next Page

date disability was established. On September 1, 2014, medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of this decision. Thus, the claimant's disability ended on September 1, 2014.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis

See Next Page

despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the last step of the sequential evaluation.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

If the claimant is found disabled at any point in the process, I must also determine if his disability continues through the date of the decision. In order to find that the claimant's disability does not continue through the date of the decision, I must show that medical improvement has occurred which is related to the claimant's ability to work, or that an exception applies (20 CFR 404.1594(a)). In most cases, I must also show that the claimant is able to engage in substantial gainful activity (20 CFR 404.1594(a)). In making this determination, I must follow an additional eight-step evaluation process for the Title II claim (20 CFR 404.1594). If I can make a decision at a step, the evaluation will not go on to the next step.

At step one for the Title II claim, I must determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled (20 CFR 404.1594(f)(1)).

At step two for the Title II claim, I must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). If the claimant does, his disability continues (20 CFR 404.1594(f)(2)).

At step three for the Title II claim, I must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of the

See Next Page

Milton Peter Barbis ██████████                                      Page 4 of 11

impairment(s) as established by improvement in symptoms, signs or laboratory findings (20 CFR 404.1594(b)(1)). If medical improvement has occurred, the analysis proceeds to the fourth step for the Title II claim. If not, the analysis proceeds to the fifth step for the Title II claim.

At step four for the Title II claim, I must determine whether the medical improvement is related to the ability to work (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)). If the medical improvement is related to the ability to work, the analysis proceeds to the sixth step for the Title II claim. If it is not, the analysis proceeds to the fifth step for the Title II claim.

At step five for the Title II claim, I must determine if an exception to medical improvement applies (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step six for the Title II claim, I must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven for the Title II claim, I must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform his past relevant work (20 CFR 404.1594(f)(7)). If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, I must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience (20 CFR 404.1594(f)(8)). If the claimant can perform other work, he is no longer disabled. If the claimant cannot perform other work, his disability continues.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**1. The claimant meets the insured status requirements of the Social Security Act for Medicare through June 30, 2014.**

**2. The claimant has not engaged in substantial gainful activity since October 8, 2011, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*).**

The claimant worked after the established disability onset date, but this work activity did not rise to the level of substantial gainful activity (Exhibit 2D).

**3. From October 8, 2011 through August 31, 2014, the period during which the claimant was under a disability, the claimant had the following severe impairments: asthma, obesity,**

obsessive-compulsive disorder (hereinafter "OCD") and major depressive disorder (20 CFR 404.1520(c)).

These impairments are established by the medical evidence and are "severe" within the meaning of the Regulations because they cause significant limitation in the claimant's ability to perform basic work activities.

4.  **From October 8, 2011 through August 31, 2014, the period during which the claimant was disabled, the severity of the claimant's impairments met the criteria of section 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525).**

The claimant received psychotherapy from licensed social worker Arlene Costa between July 2009 and September 2013 (Exhibits 1F, 2F, 6F). Ms. Costa wrote a letter in October 2011 in which she said she had been treating the claimant for fifteen months with little change. She expressed the opinion that he was likely unemployable (Exhibit 6F, pp. 14-15). In January 2013, Ms. Costa prepared a report for a lawsuit in which the claimant was a plaintiff. The report was as an expert witness for the plaintiff. She said this lawsuit exacerbated the claimant's OCD (Exhibit 6F, pp. 4-12). Ms. Costa prepared a letter in January 2013, detailing the claimant's treatment with her. He had been referred to Ms. Costa by his primary care physician, Dr. Tu DePry, who had diagnosed him with OCD, anxiety and depression symptoms. The doctor had prescribed Pristiq. The claimant reported a history of OCD, and he said he was experiencing anxiety and depression. Ms. Costa provided counseling and testing. He was diagnosed with major depressive disorder, with severe symptoms in July 2009, as a result his responses in the Major Depression Inventory. The claimant also said he suffered from insomnia. It was her opinion his symptoms prevented him from engaging in work (Exhibit 1F). Ms. Costa wrote another letter in September 2013 in which she stated the claimant's symptoms remained unchanged. She opined that despite medication and therapy, he continued to be unable to work, and frequently was unable to leave his home because of these conditions (Exhibit 2F).

Whether someone is able to work is an issue reserved to the Commissioner pursuant to 96-5p. However, I have considered Ms. Costa's evaluation regarding the severity of the claimant's mental impairments in arriving at this decision. I accord great weight to her assessment of his capabilities.

The claimant was seen by consultative psychologist Mary Lewis in October 2013. The claimant presented complaining of OCD. Dr. Lewis observed the claimant's mood was euthymic, he was oriented times three, and his attention and concentration were satisfactory. The claimant was diagnosed with mood disorder, not otherwise specified. The doctor estimated that the claimant's global assessment of functioning (hereinafter "GAF") was 70, indicating some mild symptoms or moderate difficulty in social, occupational, or school functioning (Am. Psychiatric Assn., *Diagnostic and Statistical Manual of Mental Disorders*, 4th Ed. (1994) (DSM-IV) 32). Dr. Lewis concluded the claimant had no significant impairments. He was able to understand and remember both very short and simple instructions, as well as detailed instructions (Exhibit 4F).

Dr. Lewis conducted a detailed mental evaluation, which I give little weight. This was based on a one-time visit. I have given greater weight to the opinion of social worker Arlene Costa who,



See Next Page

although not an acceptable treating source, saw the claimant over a four-year period. In addition, the weight of the other evidence, including the claimant's prior period of disability for the same conditions, supports the current diagnosis of OCD.

Psychiatrist Dwight Sievert, M.D., treated the claimant between April 2014 and September 2014, where he was seen monthly. Records from April 2014 indicate the claimant was too afraid to take medication he had been prescribed for his mental impairments, and was consequently not doing well. He was diagnosed with OCD. His GAF was estimated to be 70, which was consistent with the assessment of Dr. Lewis, above. The claimant was prescribed Fluoxetine and Lorazepam (Exhibit 5F, p. 6). The following month he was still anxious. His medication dosage of Fluoxetine (Prozac) was increased (Exhibit 5F, p. 5). In June 2014, the claimant was diagnosed with depression (Exhibit 5F, p. 4). By July 2014, his diagnoses were OCD, and severe, recurrent major depression, without psychotic features (Exhibit 5F, p. 3).

Psychologist K. P. Morris of the State agency reviewed the claimant's medical records regarding his mental impairments and concluded they were not medically determinable (Exhibit 3A, p. 10).

Little weight is given to the opinion of Dr. Morris, a non-examining psychologist. Greater weight is given to the later received evidence from Ms. Costa, as previously discussed.

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant requested at the hearing, a closed period of disability commencing on January 1, 2009, through August 31, 2014. There is no medical evidence going back that far. Although clinician Costa referenced treatment in July 2009, no treatment notes were provided in support of this. I have chosen October 8, 2011 as the starting date of the closed period. That was the date of Ms. Costa's first letter regarding his mental impairments was written (Exhibit 6F, p. 14).

See Next Page

Milton Peter Barbis    Page 7 of 11

I find that, from October 8, 2011 through August 31, 2014, the severity of the claimant's impairments met the criteria of section 12.06. The "paragraph A" criteria were satisfied because the claimant had generalized persistent anxiety accompanied by vigilance, apprehensive expectation, and autonomic hyperactivity. The "paragraph B" criteria were satisfied because the claimant's impairments caused marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. The evidence shows that during the relevant period, the claimant was often unable to leave his home, he was sleep deprived because he was staying up to watch for people who might hurt his family, and he testified he vomited frequently due to stress (Exhibit 6F).

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible from October 8, 2011 through August 31, 2014.

**5. The claimant was under a disability, as defined by the Social Security Act, from October 8, 2011 through August 31, 2014 (20 CFR 404.1520(d)).**

**6. The claimant has not developed any new impairment or impairments since September 1, 2014, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from October 8, 2011 through August 31, 2014.**

**7. Beginning September 1, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).**

The impairments listed in Appendix 1, Subpart P, CFR Part 404, which are most nearly applicable to the claimant's medically determinable impairments, particularly sections 1.00Q and 3.03, have been reviewed and the criteria are not met or medically equaled.

The claimant was seen by consultative internist Roger Wagner, M.D., in October 2013. The doctor reviewed the claimant's medical records and conducted an internal medical examination. The claimant presented with complaints of asthma and a history of Hashimoto's disease. He said he had developed asthma in childhood. The claimant reported he had never had surgery or radioactive iodine ablation for his Hashimoto's disease. Dr. Wagner noted the claimant's lungs were symmetric with normal excursions, and clear to auscultation throughout, all range of motion testing was within normal limits, and his neck was supple without adenopathy, thyromegaly or masses. The claimant was diagnosed with asthma, which was reasonably well controlled; and a history of Hashimoto's thyroiditis, but now had a hypothyroid, which was treated with medication. The doctor concluded the claimant had no exertional, postural, or manipulative limitations. He should avoid prolonged exposure to concentrated chemicals, dust, fumes or gases (Exhibit 3F).

See Next Page

I give great weight to the opinion of Dr. Wagner, which was based upon a thorough, well-documented examination. Additionally, Dr. Wagner is Board-certified in internal medicine, which gives His opinion greater weight. This opinion has been adopted in my decision.

Additionally, the claimant has obesity that affects his ability to work. He testified he is 5 foot 9 inches tall and weighs 245 pounds. This results in a Body Mass Index of 36.2, which is classified as obese. Obesity is a risk factor and the effect it has on total body function must be considered (Social Security Ruling 02-1p). The claimant's obesity could cause limitations in exertional functions such as sitting, standing, walking lifting, carrying, pushing, and pulling. It could also affect the claimant's ability to perform postural activities, such as climbing, balancing, stooping, and crouching. The claimant's obesity was considered and factored into the residual functional capacity assessment for restricted work.

Beginning September 1, 2014, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, beginning September 1, 2014, the claimant has moderate restriction.

In social functioning, beginning September 1, 2014, the claimant has moderate difficulties.

With regard to concentration, persistence or pace, beginning September 1, 2014, the claimant has moderate difficulties.

As for episodes of decompensation, beginning September 1, 2014, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant is able to live outside a highly supported living arrangement and is not prone to decompensate under minimal increases in pressure.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments. The mental residual functional capacity assessment used at the past relevant work and other work steps requires a

See Next Page

more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**8. Medical improvement occurred as of September 1, 2014, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).**

The claimant requested that benefits be for a closed period, ending August 31, 2014, because he has returned to work.

**9. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing (20 CFR 404.1594(c)(3)(i)).**

**10. After careful consideration of the entire record, I find that, beginning September 1, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He should avoid concentrated exposure to dust, gases and fumes. The claimant is able to perform simple routine tasks, with occasional contact with the public, coworkers and supervisors. He is capable of working in the same building as coworkers and supervisors, but not side-by-side.**

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

There is no evidence the claimant has required emergency room intervention or hospitalization for asthma attacks. Pulmonary function studies were not performed. No treating or examining physician has precluded work based on his asthma. In sum, the above residual functional capacity assessment is supported by the objective medical evidence.

**11. The claimant is unable to perform past relevant work (20 CFR 404.1565).**

The vocational expert testified the claimant's past relevant work as a Business Education Instructor (DOT 090.222-010) is classified as light highly skilled work. The vocational expert testified further, that based on the claimant's current residual functional capacity, he would not have been able to perform his past relevant work since September 1, 2014.

**12. Since September 1, 2014, the claimant has been a younger individual age 18-49 (20 CFR 404.1563).**

**13. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

See Next Page



**14. Beginning September 1, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**15. Beginning September 1, 2014, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

Beginning September 1, 2014, the claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent of erosion of the occupational base of unskilled work at all exertional levels caused by these limitations, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as determined for the period beginning September 1, 2014. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as

| Job Title | Dictionary of Occupational Titles Number | Exertional Level | Number of Jobs Nationally |
|---|---|---|---|
| Machine Feeder | 699.686-010 | medium unskilled | 40,000 |
| Box Bender | 641.687-010 | medium unskilled | 107,000 |
| Can Filler | 922.687-030 | medium unskilled | 99,000 |

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

Based on the testimony of the vocational expert, I conclude that, beginning September 1, 2014, the claimant has been capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**16. The claimant's disability ended September 1, 2014 (20 CFR 404.1594(f)(8)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on October 5, 2012, the claimant was disabled under sections 216(i) and 223(d) of the Social Security Act, from October 8, 2011 through August 31, 2014.

See Next Page

Milton Peter Barbis ▮▮▮▮▮▮▮▮▮▮▮  Page 11 of 11

The component of the Social Security Administration responsible for the issuance of Medicare cards will notify the claimant of the month that coverage begins.

/s/ *Sharon L. Madsen*
Sharon L. Madsen
Administrative Law Judge

September 18, 2015
Date



# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Explanation-CA-B Williams MD-PRT-A Garcia MD-No RFC | | 02/26/2013 | 8 |
| HO 2A | Initial Disability Determination by State Agency, Title II-MQGE | | 02/26/2013 | 1 |
| HO 3A | Disability Determination Explanation-CA-H Pham MD-PRT-K Morris PsyD-No RFC | | 01/09/2014 | 13 |
| HO 4A | Reconsideration Disability Determination by State Agency, Title II-MQGE | | 01/09/2014 | 1 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T2 Notice of Disapproved Claim-MQGE-RSI | | 02/28/2013 | 4 |
| HO 2B | Representative Fee Agreement/Melissa Proudian, Attorney | | 03/12/2013 | 1 |
| HO 3B | Appointment of Representative/Melissa Proudian, Attorney | | 03/12/2013 | 1 |
| HO 4B | Request for Reconsideration | | 04/11/2013 | 1 |
| HO 5B | T2 Disability Reconsideration Notice-MQGE-RSI | | 01/09/2014 | 5 |
| HO 6B | Request for Hearing by ALJ | | 03/10/2014 | 2 |
| HO 7B | Request for Hearing Acknowledgement Letter | | 03/14/2014 | 7 |

HA-L39 (03-2007)

Milton Peter Barbis ~~████████~~                                    Page 2 of 4

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 8B | Outgoing ODAR Correspondence/VIDEO OPT-OUT | | 10/10/2014 | 4 |
| HO 9B | Hearing Notice - Hrg 08/06/15 @01:00pm - VE Invite Attchd | | 06/29/2015 | 27 |
| HO 10B | Notice Of Hearing Reminder-Hrg 08/06/15 @01:00pm | | 07/23/2015 | 6 |
| HO 11B | Appointment of Representative/Melissa Proudian, Attorney | During hearing | 08/05/2015 | 1 |

### Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits filed | | 10/11/2012 | 5 |
| HO 2D | Certified Earnings Records | | 02/20/2015 | 2 |
| HO 3D | Summary Earnings Query | | 02/20/2015 | 1 |
| HO 4D | Detailed Earnings Query | | 02/20/2015 | 2 |
| HO 5D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 02/20/2015 | 1 |

### Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Field Office | | | to 10/11/2012 | 3 |
| HO 2E | Disability Report - Adult | | | to 10/11/2012 | 7 |
| HO 3E | Report of Contact | | DO 952 | to 10/16/2012 | 2 |
| HO 4E | Report of Contact | | DO 952 | to 10/16/2012 | 1 |

HA-L39 (03-2007)

Milton Peter Barbis                                                         Page 3 of 4

| | | | | | |
|---|---|---|---|---|---|
| | HO 5E | Report of Contact | DO 952 | to 11/29/2012 | 1 |
| | HO 6E | Disability Report - Field Office | | to 04/17/2013 | 2 |
| | HO 7E | Disability Report - Appeals | | to 04/17/2013 | 6 |
| | HO 8E | Work Activity Report SE | DO 952 | to 09/04/2013 | 9 |
| | HO 9E | Work Activity Report EE | DO 952 | to 09/04/2013 | 4 |
| | HO 10E | Work History Report | clmt | to 09/10/2013 | 12 |
| | HO 11E | Asthma Questionnaire | clmt | to 09/22/2013 | 3 |
| | HO 12E | Function Report - Adult | clmt | to 09/22/2013 | 19 |
| | HO 13E | Disability Report - Field Office | | to 03/10/2014 | 2 |
| | HO 14E | Disability Report - Appeals | | to 03/10/2014 | 5 |
| | HO 15E | Representative Correspondence | Fresno ODAR | to 02/20/2015 | 11 |
| | HO 16E | Resume of Vocational Expert | Cheryl Chandler | to 06/30/2015 | 2 |
| | HO 17E | Medications | ATTORNEY | to 07/28/2015 | 2 |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|

HA-L39 (03-2007)

Milton Peter Barbis ██████████                                          Page 4 of 4

| | | | | |
|---|---|---|---|---|
| HO 1F | Office Treatment Records | ARLENE COSTA LCSW | to 01/27/2013 | 6 |
| HO 2F | Office Treatment Records | ARLENE COSTA LCSW | to 09/18/2013 | 5 |
| HO 3F | CE Internal Medicine | MDSI PHYSICIAN GROUP-R Wagner MD | to 10/25/2013 | 7 |
| HO 4F | CE Psychiatry | MDSI PHYSICIAN GROUP-M Lewis PsyD | to 10/27/2013 | 8 |
| HO 5F | Office Treatment Records | SIEVERT, DWIGHT M.D. | 04/21/2014 to 09/06/2014 | 7 |
| HO 6F | Office Treatment Records | COSTA, ARLENE LCSW | 10/08/2011 to 07/19/2013 | 15 |

# CERTIFICATE OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is 1725 N. Fine Avenue, Fresno, California 93717.

On December 4, 2015, I served the document(s) described as: **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER AND/OR PRETRIAL ORDER TO ALLOW PLAINTIFF TO DESIGNATE EXPERT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelope(s) and/or package(s) addressed as follows:

Bruce Daniel Praet
Ferguson Praet and Sherman
1631 E. 18th Street
Santa Ana, CA 92705-7101

Michael L. Bean
Smith Smith & Feeley LLP
16330 Bake Parkway
Irvine, CA 92618

Victoria C. Geary
State Board of Equalization
450 N Street, MIC: 82
Sacramento, CA 95814

Peter Anthony Meshot
Stephen Charles Pass
Office of the Attorney General
1300 I Street
Sacramento, CA 95814

Arthur A. Small, Esq.
7540 Shoreline Drive, Ste C
Stockton, CA 95219

☒ **BY ELECTRONIC MAIL:** By filing electronically with the U.S. District Court, Eastern Division, and opting to receive service by electronic mail, service of this document is hereby deemed served.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 30, 2015, at Fresno, California.

/s/ Christy Reed
Christy Reed

3    00035002.v1

Request for Judicial Notice in Support of Plaintiffs' Reply to Defendants' Opposition to Motion to Amend Scheduling Order and/or Pretrial Order to Allow Plaintiff to Designate Expert