# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZONE SPORTS CENTER, LLC, et al., | Case No. 1:11-cv-00622-SKO |
| Plaintiffs, | **ORDER DENYING ZONE SPORTS CENTER, LLC'S MOTION TO AMEND SCHEDULING ORDER TO ALLOW DESIGNATION OF EXPERT WITNESSES** |
| v. | |
| BEN RODRIGUEZ, | |
| Defendant. | **(Doc. 150)** |

## I. INTRODUCTION

Plaintiffs Zone Sports Center, LLC ("Zone") and Claire Barbis, by and through her guardian ad litem Heidi Barbis (collectively, "Plaintiffs"), maintain this suit against Defendant Benjamin Rodriquez ("Defendant") pursuant to 42 U.S.C. § 1983.  Zone filed this motion to amend the scheduling order to allow late designation of an expert, which Defendant opposes.  (Docs. 150, 151.)  For the reasons set forth below, Zone's motion to amend the scheduling order to allow the untimely designation of an expert witness is DENIED.

## II. BACKGROUND

On November 14, 2011, a scheduling order was issued requiring all experts to be disclosed on or before November 9, 2012, and all rebuttal experts to be disclosed on or before December 10, 2012.  (Doc. 38, 3:5-6.)  On January 11, 2013, Defendants Brendan Rhames and the City of Fresno ("City Defendants") filed a motion for summary judgment, which was granted on March 3,

2013. (Doc. 64.) Judgment was entered in favor of the City Defendants as to Plaintiffs' claims against them. (Doc. 65.) The parties remaining in the lawsuit consented to the jurisdiction of the U.S. Magistrate Judge, and the case was transferred to the undersigned on March 15, 2013. (Doc. 68.) A settlement conference was held on April 5, 2013, but the parties were unable to resolve the case. (Doc. 77.)

A pre-trial conference was set for June 26, 2013, and the trial was set for August 13, 2013. A joint pre-trial statement was filed on June 21, 2013, in which Defendant noted no expert was designated by Plaintiffs and argued Plaintiffs should be precluded from presenting any expert opinion testimony at trial. (Doc. 85.)

At the June 26, 2013, pre-trial conference, the Court noted no experts had been designated, and Plaintiffs' counsel, Mr. Hamlish, Esq., stated Zone's damage testimony would be presented through lay witnesses Mr. Barbis, Mr. Young, and Mr. Benjamin who had executed leases that comprise part of Zone's damages. (Doc. 154-1, Pass Decl., June 26, 2013, Pre-trial Conference Transcript ("PTC Trns.") 8:3-16.) No request was made at that time to designate an expert; rather, Mr. Hamlish anticipated presenting damage testimony without an expert: "The, the leases are complicated and the person who, Mr. Barbis and Mr. Benjamin, Mr. Young, who were the people who negotiated and who signed the leases, will testify as to the nature of the lease and the income from the lease, the lost income from the lease." (Doc. 154-1, Pass Decl., PTC Trns., 9:14-18.)

On July 2, 2013, the Court issued a pre-trial order and noted that neither party had disclosed experts. (Doc. 89.) On July 16, 2013, Plaintiffs filed a Notice of Appeal as to the March 3, 2013, summary judgment order, and the case was stayed pending the appeal. While the case was stayed, Mr. Hamlish sought to withdraw as Plaintiffs' counsel because a conflict had arisen with Plaintiffs – i.e., Plaintiffs had filed suit against Mr. Hamlish for malpractice. Mr. Hamlish was allowed to withdraw as Plaintiffs' counsel of record in December 2014. (Doc. 117.)

On August 2015, Plaintiffs requested that Mr. Thornton be substituted as their attorney of record, which the Court granted on September 1, 2015. (Docs. 134-139). On October 20, 2015, the Ninth Circuit granted the parties' stipulated motion to dismiss the appeal. On October 26,

2015, the stay of this litigation was lifted, and a trial-setting conference was held on November 10, 2015.

On December 4, 2015, Zone filed a motion to amend the scheduling order to permit designation of an expert witness regarding Zone's damages. (Doc. 150.) Zone asserts there is good cause to allow such an amendment because Plaintiffs' original counsel was negligent in failing to designate an expert witness, and the managing member of Zone, Milton Barbis, was under a medical disability during the time experts were to be designated and could not properly oversee his counsel's actions. Zone also contends the lack of timely expert-witness disclosure is harmless.

On December 21, 2015, Defendant opposed Zone's motion asserting the failure to disclose an expert was a deliberate decision on the part of Zone's prior counsel, particularly as this issue was discussed at the June 2013 pre-trial conference. Moreover, permitting Zone to disclose an expert at this point would necessitate reopening discovery and would require Defendant to re-evaluate his trial strategy.

On December 30, 2015, Zone filed a reply asserting its prior counsel's conduct in failing to designate a witness was grossly negligent, which constitutes extraordinary circumstances sufficient to establish good cause for a schedule modification. (Doc. 156.) In support of its motion, Zone also requests judicial notice of a Social Security Administration decision finding Mr. Barbis disabled from October 8, 2011, through August 31, 2014. (Doc. 156.)[1]

### III. DISCUSSION

**A.    Applicable Legal Standards**

District courts in the Ninth Circuit have addressed motions related to late and untimely designations of experts in two different ways. Courts frequently construe requests for late or untimely designation of an expert as motions to amend the schedule pursuant to Federal Rules of Civil Procedure 16(b) and consider the good cause of the party seeking the amendment to the

---

[1] Zone's request for judicial notice pursuant to Federal Rule of Evidence 201 is GRANTED: Mr. Barbis was deemed disabled by the Social Security Administration from October 8, 2011, through August 31, 2014. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of "matters of public record" (internal citation omitted)).

3

1 schedule. *See, e.g., Fidelity Nat'l Finc., Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D 649 (S.D. Cal. 2015); *Park v. CAS Enterprises, Inc.*, No. 08-cv-00385-DMS (NLS), 2009 WL 4057888, at *2 (S.D. Cal. Nov. 18, 2009). Other courts have construed untimely designation of expert witnesses under Rules 26(a) and 37(c) which govern disclosure of witnesses and the sanctions for failure to disclose witnesses timely. *See, e.g., Nijjar v. Gen. Star Indem. Co.*, No. 12-cv-08148 DDP (JCGx), 2014 WL 271630 (C.D. Cal. Jan. 2014).

This Court, however, finds the Ninth Circuit's analytical framework articulated in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) to be applicable and controlling. In *Johnson*, the trial court considered a request under Rule 15(a) to amend the complaint to add a defendant after the time to do so had expired under the scheduling order, which was denied for lack of diligence under Rule 16. In affirming the district court on appeal, the appellate court held that, because the motion to amend the complaint was outside the scheduling deadline to amend the pleadings, the request was first governed by Rule 16 and was then secondarily subject to a determination under Rule 15. The court reasoned that the evaluation under Rules 16 and 15 were not "coextensive." While Rule 15 focuses on "the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

Similarly, the good cause analysis of Rule 16 is not coterminous with the sanction considerations under Rule 37(c), and seeking to disclose experts after the deadline similarly triggers two separate sets of Rules as it did in *Johnson*. *See id.* First, like *Johnson*, a motion to designate experts outside the parameters of the scheduling order implicates Rule 16(b). Pursuant to Rule 16(b), the court is required to enter a scheduling order and set time limits to complete discovery, among other things. Once entered, the schedule may only be modified for good cause and with the judge's consent. Fed. R. Civ. P. Rule 16(b).

Second, under Rule 26(a), parties are required to disclose the identity of any expert witness who will present evidence under Federal Rule of Evidence 702, 703, or 705; most expert disclosures must be accompanied by a written report. Fed. R. Civ. P. 26(a)(2)(A)-(B). The parties are required to make those disclosures at the times and in the sequence the court orders. Fed. R.

4

Civ. P. 26(a)(2)(D).  Failure to designate expert witnesses under the procedures set forth in Rule 26(a) results in a self-executing, automatic exclusion sanction under Rule 37(c)(1):  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37 is a "self-executing, automatic sanction to provide a strong inducement for disclosure of material").

Like the motion to amend in *Johnson*, in seeking to designate an expert outside the deadline, Zone must confront the Federal Rules on two separate fronts.  Zone seeks to modify the schedule by designating an expert three years after the November 2012 deadline, which will also require re-opening expert discovery and permitting Defendant to designate a rebuttal expert if he wishes.  As no expert was disclosed pursuant to Rule 26(a), Zone is also automatically precluded from introducing any expert testimony at trial pursuant to Rule 37(c).  If the court determines there is no good cause for amendment to the schedule, there is no reason to consider whether Zone is entitled to relief from the Rule 37(c) exclusion sanction.  *See Johnson*, 975 F.2d at 608 (party seeking to amend outside the scheduling order deadline must show good cause, and if good cause is shown, then party must demonstrate amendment proper under Rule 15 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987))).

**B.     Modification of the Scheduling Order is Not Warranted Under Rule 16**

Zone contends there is good cause to modify the schedule with respect to designation of experts because it only recently discovered that Mr. Hamlish failed to timely designate an expert, Zone's managing member Milton Barbis was medically disabled and not able to properly monitor Mr. Hamlish, the expert testimony is critical to Zone's case, and a schedule change will not prejudice Defendant as there is time to conduct expert discovery prior to the September 3, 2016, trial.

In response, Defendant contends Mr. Hamlish never intended to disclose Dr. Luna – it was not a mistake or inattention to the case deadlines, it was a deliberate choice by Zone's counsel to admit lay testimony to prove its damages.  Zone's failure to identify any expert witnesses was

5

noted in the parties' joint pre-trial report, and the matter was discussed at the pre-trial conference. Defendant asserts Zone is bound by any negligent acts of its counsel in failing to designate an expert. Moreover, Defendant maintains allowing expert designation at this point would "change the entire character of the case" and result in prejudice.

### 1. Zone's Motion is Not Supported by Good Cause

Federal Rule of Civil Procedure 16 requires the trial court to enter pretrial scheduling orders which set dates for the completion of discovery, hearings on non-dispositive and dispositive motions, trial, and other matters. Rule 16(b)(4) provides the "scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a party seeks to continue the dates set by the court, it must first show "good cause" for modification of the order under Rule 16(b). *See Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The good cause inquiry primarily considers the diligence of the party seeking amendment. *Johnson*, 975 F.2d at 608. A party demonstrates good cause by establishing that, even with the exercise of due diligence, he or she was unable to meet the scheduling deadlines. *See Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609. "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609 ("Although the existence or degree of prejudice to the party opposing modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.").

#### a. Zone Has Not Demonstrated Diligence

The record reflects Mr. Hamlish made a deliberate decision not to designate an expert as to Zone's damages. No expert witness was disclosed on or before the November 2012 deadline, the issue was never raised while the City Defendants' summary judgment motion was pending in early 2013, and when the issue was expressly discussed at the June 2013 pre-trial conference by Defendant, Mr. Hamlish acknowledged Zone had not designated any experts and indicated he would be seeking to introduce damage testimony through lay witnesses:

> Mr. Hamlish: No questions. I just, I just thought that the, the damages phase will take quite a bit of time and I thought that the, we would, if there was no liability found, we, the, the trial, length of the trial would be shortened considerably.
>
> The Court: Let me as this: How long do you expect the damage phase to take, Mr. Pass, and then Mr. Hamlish, if you can respond?
>
> Mr. Pass: For the defense, I don't expect the damages phase to take very long because there aren't any experts.
>
> The Court: Okay . . . . it's my understanding there are no experts. So that would be the – neither party has designated any expert witnesses. So what would be the issue regarding the damages phase that would extend the length of the trial?
>
> Mr. Hamlish: Well, there's a, about eight or ten leases that have to be testified to as to the , the leases themselves and the income from the leases, which will be Mr. Barbis and Mr. Young and Mr. Benjamin will testify to. The income from the plaintiff, the lost income from the plaintiff. Again, we'll have to – we'll be – that's quite complicated. And I think it, I think it'll probably take a day and a half to, to do that.
>
> . . .
>
> Mr. Pass: Your Honor, this is going to be a bone of contention in the trial as to whether any of this is even admissible. I suspect it is going to be expert testimony that the plaintiffs, that these persons – because they are not parties – are going to be offering themselves and it sounds, from what Mr. Hamlish is saying, as though it's quite cumulative if the three of them are going to be testifying about the same things. I, I find it difficult to believe that it would take a day and a half.
>
> The Court: Okay. Mr. Hamlish, to the extent that testimony can be streamlined and presented in, in an efficient manner that's not cumulative, I suspect we can do that portion in less than a day and a half. Because, again, there are no expert witnesses designated to provide testimony with regard to those damages.
>
> Mr. Hamlish: The, the leases are complicated and the person who, Mr. Barbis and Mr. Benjamin, Mr. Young, who were the people who negotiated and who signed the leases, will testify as to the nature of the lease and the income from the lease, the lost income from the lease.

(Doc. 154-1, Pass Decl., PTC Trns., 4:15-6:18.)

Zone argues Mr. Hamlish was simply trying to "cover" his error by not requesting late designation of an expert, but at the same pre-trial conference, Mr. Hamlish sought to include Claire Barbis, who was not identified in the parties' joint pre-trial report, as a potential trial-witness. Mr. Hamlish also affirmatively stated that all his trial witnesses, with the exception of

7

Claire Barbis, were identified in the parties' joint pre-trial report. Notwithstanding Mr. Hamlish's subjective state of mind in failing to designate an expert or seek modification of the schedule once the issue was addressed at the pre-trial conference, no expert was designated and no remedy was sought until after an appeal was taken, the litigation was stayed for two years, and new counsel was retained by Zone after the appeal was dismissed. An eleventh-hour case evaluation by newly retained counsel finding there is need for expert testimony regarding damages does not demonstrate diligence during the course of the litigation. There is simply no evidence Zone was diligent but, because of circumstances outside its control, was unable to meet the November 2012 expert disclosure deadline.

As Zone's counsel, Mr. Hamlish's litigation decisions are imputed to Zone. It is well-established law that a party to litigation "is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (holding that clients are "considered to have notice of all facts known to their lawyer-agent"). In *Link*, the Supreme Court determined the district court properly dismissed a case for failure to prosecute when the plaintiff's attorney failed to appear at a scheduled pretrial conference after litigating the action in a dilatory fashion. 370 U.S. at 633. The court noted there was "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633-34. The failure of counsel in *Link* had even more dire consequences than in this case, as there counsel's failure resulted in the dismissal of the entire action. Similar to *Link*, Mr. Hamlish's decisions not to designate a witness or seek relief from his failure to designate a witness are attributable to Zone as he was Zone's freely chosen representative.

      **b.**      **Milton's Barbis' Alleged Disability Does Not Establish Good Cause**

Zone contends Mr. Barbis suffered a mental disability during the time expert witnesses were to have been designated and was unable to supervise Mr. Hamlish, which was a circumstance

8

beyond Zone's control that resulted in the failure to disclose an expert witness. Mr. Barbis filed a declaration in support of Zone's motion, stating that he was disabled at the time expert disclosures were due:

> At the [time expert disclosures were due,] I was declared disabled by a Judge with the State of California and under a physician's care for Severe Post Traumatic Stress Disorder and Uncontrolled Obsessive Compulsive Disorder due to the fact of the Raid on my business and family and also that I had lost my entire life's work due to the raid and my insurance company's refusal to honor the Zone's insurance claim.

(Doc. 150-1, Barbis Decl., ¶ 8.) Mr. Barbis was deemed disabled by the Social Security Administration from October 8, 2011, through August 31, 2014. (Doc. 156.)

Under the circumstances of this case, Mr. Barbis' health issues do not constitute an exception to the good cause requirement under Rule 16. Mr. Hamlish was Zone's selected counsel prior to any asserted disability of Mr. Barbis as this action was filed by Mr. Hamlish on Zone's behalf in April 2011. (*See* Doc. 1.) There is also no evidence Mr. Barbis is the only member of Zone who could make decisions about Zone's litigation and oversee Mr. Hamlish's representation. As demonstrated in trial proceedings in a related case, 1:11-cv-00845-SKO, *Fresno Rock Taco, LLC v. National Ins. Co.* (E.D. Cal. 2011) ("*National*"), Mr. Howard Young was a member of Zone and participated as its representative during the entire course of two separate trials in May 2013 and August 2014. Zone and another corporate entity, Fresno Rock Taco, LLC ("FRT"), were represented by Mr. Hamlish in *National* until June 2013, when they substituted different counsel in place of Mr. Hamlish. At the time Mr. Barbis was deemed disabled by the Social Security Administration, he was able to act as a party representative for FRT in the *National* action at all 13 days of trial in May 2013 and gave testimony during the course of trial, as well as during the entire course of the August 2014 trial. He also demonstrated the ability to make changes to Zone and FRT's legal representation in that action. Based on these facts, the Court is unpersuaded Mr. Barbis' mental disability precluded him from "overseeing" his counsel's actions in this case. Mr. Barbis' inability to work as defined by the Social Security Act provides no basis to relieve Zone of its counsel's actions in failing to designate witnesses timely in November 2012.

### 2.     Zone Has Not Demonstrated Extraordinary Circumstances

Zone argues in its reply brief that Mr. Hamlish's conduct in failing to designate an expert constitutes gross negligence, which is an extraordinary circumstance sufficient to warrant modification of the scheduling order.

In *Johnson*, the court held Rule 16(b)'s reference to "good cause" was "a close correlate" of "extraordinary circumstances," suggesting extraordinary circumstances may be sufficient to establish good cause. *See Johnson*, 975 F.2d at 640.  In the context of default judgment, the Ninth Circuit has determined that where an attorney's conduct rises to the level of gross negligence, the conduct is not attributable to the client, and it is sufficient to establish extraordinary circumstances under Rule 60(b) and set aside a judgment. *Comm. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (distinguishing between "a client's accountability for his counsel's neglectful or negligent acts – too often a normal part of representation—and his responsibility for the more unusual circumstances of his attorney's extreme negligence or egregious conduct").

In *Tani*, the defendant moved to set aside a default judgment under Rule 60(b)(6), which permits a court to grant relief where a party "demonstrates 'extraordinary circumstances which prevented or rendered him unable to prosecute [his case].'" *Id.* at 1168 (internal quotation marks and citation omitted).  Despite the general rule announced in *Link* that the client must bear responsibility for the negligent acts of its counsel, the court concluded an attorney's gross negligence could constituted extraordinary circumstances warranting relief under Rule 60(b)(6). In considering the defendant's attorney's conduct, the court found the attorney had "virtually abandoned" the client, engaged in "inexcusable and inexplicable" conduct that included failure to follow court orders or make court appearances, failure to file and serve pleadings, and failure to oppose motions. This resulted in the defendant "receiving practically no representation at all." *Id.* at 1171.  The circumstances were made worse in that both the attorney and the defendant's financial advisor "repeatedly" informed the defendant that the attorney "was performing his responsibilities, . . . deliberately misleading [the defendant] and depriving him of the opportunity

to take action to preserve his rights." *Id.* The court concluded the defendant had demonstrated "extraordinary circumstances" justifying relief under Rule 60(b)(6).

In *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 674 (C.D. Cal. 2003), the court analyzed a request to modify the scheduling order on grounds that the plaintiff's law firm engaged in gross negligence that constituted good cause for modification of the scheduling order. In considering *Link* and *Tani*, the court reasoned that if a party shows only ordinary negligence on the part of its attorneys, then *Link* applies and the party is held accountable for the attorney's lack of diligence. If, on the other hand, a party shows that its counsel was grossly negligent or constituted abandonment of the client, which amounts to extraordinary circumstances under *Tani*, there may be good cause to modify the scheduling order. *Matrix Motor Co., Inc.*, 218 F.R.D. at 674.

Turning to the facts of this case, however Mr. Hamlish's failure to designate an expert witness is labeled, the conduct is more akin to that of counsel in *Link* than of counsel in *Tani*. On the record before the Court, Mr. Hamlish's error was limited to a failure to timely designate an expert, which is distinguishable from *Tani*. In *Tani*, the attorney virtually abandoned the client by failing to proceed with a defense despite court orders to do so. 282 F.3d at 1171. Counsel also failed to file a stipulation for an extension of time to file an answer and failed to serve a copy of the answer despite repeated requests and a direct order from the district court. *Id.* He additionally failed to contact opposing counsel for preliminary settlement discussions despite being ordered to do so, failed to oppose a motion to strike the answer, and failed to attend various hearings. *Id.* Moreover, there was evidence the attorney explicitly represented to his client that the case was proceeding properly. *Id.* Mr. Hamlish's error is not similar in magnitude or quantity to the errors made by counsel in *Tani*; his conduct did not result in an adverse judgment against Zone, there is no evidence he made misrepresentations to Zone about the expert disclosures, and no evidence he violated court orders that led to the virtual abandonment of his client.

Rather, Mr. Hamlish's conduct here is more akin to that in *Link* where the plaintiff's counsel failed to appear for a pretrial conference without any justifiable reason, and the court

11

dismissed the action for failure to prosecute.[2]  While Zone argues Dr. Luna's testimony is essential to introduction of much of its damages evidence and thus Mr. Hamlish's conduct is extremely prejudicial to Zone, unlike in *Link*, Mr. Hamlish's error did not result in the outright dismissal of Zone's case.

The failure to designate in this case is also similar to that of the defendants' counsel in *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 97 F. Supp. 2d 8 (D.D.C. 2000).  There, the defendants filed several counterclaims, a scheduling order was subsequently issued, but the defendants did not serve an expert report by the deadline.  Plaintiff then filed a motion for summary judgment on the defendants' counterclaims arguing that to establish a prima facie case of legal malpractice (the essence of the counterclaims), the party must present expert testimony establishing the standard of care by which the attorney could be measured.  The plaintiff asserted that without any expert testimony, the defendants could not as a matter of law prevail on their counterclaims.  Instead of filing an opposition, the defendants filed motions, one of which was to modify the schedule and allow for the designation of an expert.  The court found there was no good cause to extend the deadline, and any "unfortunate results from the inability of defendants' counsel (including their California counsel) to maintain discovery materials or file timely motions for extensions of time arise from their own voluntary choice of attorneys." *Id.* at 11.  As a result, summary judgment for the plaintiff on the defendants' counterclaims was granted.  Here, the same deadline was missed, and although the consequence of failing to designate an expert may be detrimental to Zone's interests as it was to the defendants in *Shapiro, Lifschitz, Schram*, this alone does not establish extraordinary circumstances.

In sum, the facts and reasoning of *Tani*, *Link*, and *Shapiro, Lifschitz & Schram* persuade the court that Mr. Hamlish's conduct is not so egregious that it amounts to extraordinary circumstances to warrant modification of the scheduling order.

---

[2] The case history in *Link* was lengthy and the case had been pending for nearly 6 years before it was dismissed for failure to prosecute.

12

**C.  Rule 37 Exclusionary Sanction is Warranted**

Although the Rule 16 analysis is dispositive pursuant to *Johnson*, even if Rule 16(b) were not a hurdle to Zone's request, there is no basis for relief under Rule 37(c).

Rule 37 provides as follows, in relevant part:

> (1) **Failure to Disclose or Supplement.**  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
>    (B) may inform the jury of the party's failure; and
>
>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

There are two exceptions to the automatic preclusion sanction for failure to disclose a witness under Rule 26(a):  substantial justification or harmlessness.  For all the reasons stated in considering whether there is good cause to support a schedule modification, there are no facts suggesting that the failure to designate an expert on or before the deadline was substantially justified.

The late disclosure is also harmful.  A disclosure at this stage will require re-opening expert discovery.  As Defendant notes, he participated in a settlement conference in April 2013 based on what was believed to be a stable and complete body of evidence.  Designating an expert at this stage renders the case assessments made at that time futile and might dictate another settlement conference if the evidence changes. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2004) (disruption to a schedule relied upon by the court and the parties to deal with the case in a thorough and orderly manner is not harmless).

Zone also argues that, even if there is an absence of substantial justification or its failure is deemed harmful, the Court should exercise its discretion in a manner similar to *Zertuche v. County of Santa Clara*, No. 11-cv-3691-YGR, 2013 WL 4111142 (N.D. Cal. Aug. 12, 2013) where the plaintiff's motion to extend time for expert disclosures was granted.  In *Zertuche*, the plaintiff

13

failed to timely disclose a treating psychiatrist as an expert based on the excusable neglect of her counsel. *Id.* at *1. The plaintiff's counsel, Adams, asserted he had inadvertently overlooked the disclosure deadline "in the flurry of discovery" around this time, and did not discover the failure until approximately one month later when he was meeting and conferring with the defendants' prior lead counsel, Coelho. Adams averred that during his conversation with Coelho, Coelho suggested it would "make sense to wait on bringing any motion for relief from the expert disclosure deadline until after the court decided the motion for summary judgment Coelho intended to file." *Id.* According to Adams, the parties agreed to include a note in their Joint Preliminary Pretrial Memorandum that would suffice to avoid any prejudice due to the passage of time before bringing the motion. *Id.*

On August 3, 2012, in the Joint Preliminary Pretrial Memorandum, the plaintiff in *Zertuche* noted she anticipated filing a motion for relief from her failure to designate her expert by the July 6, 2012, deadline. That same day, the presiding judge issued an order recusing himself from the case, and the preliminary pretrial conference was vacated. *Id.* The defendants filed their summary judgment motion on August 31, 2012, which was heard on October 9, 2012. In the interim, the plaintiff noted the expert-designation issue in two additional joint case management statements filed on September 10, 2012, and January 8, 2013. *Id.* at *2. A case management conference was held on January 14, 2013, and Adams noted the issue of his expert disclosure was still outstanding. The defendants' new counsel, Winchester, objected that although Adams had raised the issue many times, he had not filed a motion. Adams responded the parties had agreed to focus on the summary judgment motion before expending resources on the expert designation motion, and the court had indicated at the case management conference it would address the expert-designation issue in the context of the summary judgment. The court issued its order on the summary judgment motion on April 17, 2013, but did not address the expert designation issue. At a follow-up conference in June 2013, the court directed the plaintiff to file a regularly noticed motion.

In analyzing the motion under Rule 26(a) and 37(c), the *Zertuche* court found the failure to designate timely was not justified, but under the "particular factual circumstances" of the case,

14

complete exclusion of the plaintiff's expert would be an unduly harsh sanction. The issue was raised within a month of the deadline, it was also discussed at a case management conference in January 2013, and it was understood by the plaintiff that it was going to be addressed in the summary judgment order, but it was not. In light of the changes in trial judges and "the state of judicial emergency" which resulted in delays in rulings, the equities favored a late designation of the plaintiff's expert. *Id.* at *4.

The facts here are distinguishable from *Zertuche* in several respects. First, the failure to designate an expert in *Zertuche* was inadvertent and discovered almost immediately after the deadline and redress was sought quickly. Here, Mr. Hamlish appeared to have made a conscious decision not to designate an expert. At the pre-trial conference the lack of a damage expert was expressly addressed, and Mr. Hamlish asserted damage testimony would be introduced through other means. This appears to have been a chosen litigation strategy -- particularly as no remedy was sought until Zone obtained new counsel over two years later. Second, the disruption in the schedule in *Zertuche* caused by the late disclosure was compounded by the reassignment of the presiding judge, and the plaintiff expected the matter to be addressed in the summary judgment motion as the court had indicated, which did not occur. None of these factors were within the plaintiff's control. There are no such factors outside Zone's control in this case: Zone's failure to disclose an expert was known to Zone in June 2013, and redress was not sought for two-and-a-half years, which appears predicated on review of the case by newly retained counsel. This does not militate against the automatic preclusion sanction.

Zone contends total exclusion is too harsh a sanction considering the importance of Dr. Luna's testimony to the issue of damages. Zone cites *R & R Sails, Inc. v. Ins. Co. of the Pac.*, 673 F.3d 1240 (9th Cir. 2012) where the district court precluded a party from using evidence of its *Brandt* fees due to late disclosure. On appeal, the court reasoned that, because the exclusion of this evidence was tantamount to dismissal of the underlying claim, the court was required to consider whether the noncompliance involved willfulness, fault, or bad faith. The court determined the trial court had failed to make this inquiry, and the case was remanded so this analysis could be conducted. Zone argues that, although elimination of a damages expert does not

amount to dismissal of its claims, it will be "difficult if not impossible for the Zone to testify to lost future income and loss of its investment without a damages expert." (Doc. 150, 10:24-25.)

The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). To determine whether an exclusion sanction is appropriate, courts will consider the following factors: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *Wendt v. Host Int'l Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

On balance, the factors favor exclusion in this case. It is uncertain whether the disclosure at this juncture will delay the trial which is set for September 2016. What is of particular concern to the Court is that the failure to disclose appears to have been a deliberate tactical decision by Zone. The need for expert testimony is the same now as it was at the pre-trial conference in June 2013. The failure to disclose an expert has been known to Zone for two-and-a-half years without any request for relief until new counsel was retained. Considerable resources were expended administering this case, including a prior pre-trial conference and a settlement conference, which were held on the assumption that the evidence was closed, and the case was ready to proceed to trial. Zone's request to designate an expert years after the deadline and only months prior to trial is a change in litigation strategy. The failure to disclose was not an inadvertent mistake for which Zone immediately sought redress: it was a deliberate litigation decision to proceed without an expert, or at the very least a deliberate decision not to seek relief from the missed deadline to disclose an expert. Zone's significant delay in raising this issue disregards the Court's need to manage its docket and the public's interest in expeditious resolution of litigation.

Additionally, re-opening expert discovery will require Defendant to re-evaluate his case strategy, potentially designate a rebuttal witness, and again consider any potential for settlement and whether participation in *another* settlement conference may be beneficial. The prejudice to Defendant is not that he would be required to defend the case on a different theory or in a different manner, but that he expended resources in attending a settlement conference and developing a trial

1  strategy, energies that are rendered entirely futile if Zone is able to reset the deadlines and change
2  the evidentiary nature of the case unexpectedly just prior to trial.  This is precisely the type of
3  waste a scheduling order is designed to avoid.  *Marcum v. Zimmer*, 163 F.R.D. 250, 153
4  (S.D.W.V. 1995) ("Indeed, a scheduling order is the critical path chosen by the trial judge and the
5  parties to fulfill the mandate of Rule 1 in "secur[ing] the just, speedy, and inexpensive
6  determination of every action" (quoting Fed. R. Civ. P. 1)).

7  As Zone concedes, exclusion in this case is not tantamount to dismissal; thus the policy
8  favoring disposition of cases on their merits does not weigh against exclusion.  The only factor
9  that weighs against exclusion is the availability of less drastic sanctions.  The Court could impose
10 monetary sanctions as an alternative under Rule 37(c)(1), but this factor is not dispositive and in
11 this case, does not outweigh the other factors favoring exclusion.  Moreover, even if the Court
12 concluded a sanction other than exclusion was warranted, there is no good cause to support a
13 schedule modification under Rule 16 to permit designation of additional experts and further expert
14 discovery.  *See Johnson*, 975 F.2d at 609 (where no diligence is shown, "the inquiry should end").

15 As there is no good cause to modify the schedule, Zone's motion to amend the schedule
16 and designate Dr. Luna as a witness is DENIED.

IT IS SO ORDERED.

Dated:   **January 15, 2016**                   **/s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE

17