| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | *FOR COURT USE ONLY* |
|---|---|---|
| RICHARD J. KERN, 083485<br>KRISTI M. COSTA, 276415<br>PARKER, KERN, NARD & WENZEL<br>7112 N. FRESNO STREET, SUITE 300<br>FRESNO, CALIFORNIA 93720 | (559) 449-2558 | |
| ATTORNEY FOR LIEN CLAIMANT:   DEFENDANTS, ALEX COSTA AND MAD DUCK | | |

NAME OF COURT: UNITED STATES DISTRICT COURT EASTERN DISTRICT
STREET ADDRESS: OF CALIFORNIA
MAILING ADDRESS: 2500 TULARE STREET, ROOM 1500
CITY AND ZIP CODE: FRESNO, CALIFORNIA 93721
BRANCH NAME: FRESNO

PLAINTIFF: FRESNO ROCK TACO, LLC, ET AL.

DEFENDANT: BEN RODRIGUEZ, ET AL.

**NOTICE OF LIEN**
(Attachment - Enforcement of Judgment)

CASE NUMBER:
1:11-CV-00622

ALL PARTIES IN THIS ACTION ARE NOTIFIED THAT
1. A lien is created by this notice under
   a. ☐ Article 3 (commencing with section 491.410) of Chapter 11 of Title 6.5 of Part 2 of the Code of Civil Procedure.
   b. ☒ Article 5 (commencing with section 708.410) of Chapter 6 of Title 9 of Part 2 of the Code of Civil Procedure.
2. The lien is based on a
   a. ☐ right to attach order and an order permitting the creation of a lien (copies attached).
   b. ☒ money judgment.
3. The right to attach order or the money judgment is entered in the following action:
   a. Title of court *(specify)*:   FRESNO COUNTY SUPERIOR COURT, UNLIMITED CIVIL DIVISION
   b. Name of case *(specify)*: MILTON BARBIS, ET AL.  V. ALEX COSTA, ET AL.
   c. Number of case *(specify)*:   14CECG02683
   d. ☒ Date of entry of judgment *(specify)*:   02/05/15
   e. ☐ Dates of renewal of judgment *(specify)*:

4. The name and address of the judgment creditor or person who obtained the right to attach order are *(specify)*:
   ALEX COSTA and MAD DUCK VENTURES LLC, 765 W. HERNDON AVENUE, SUITE 200, CLOVIS, CA 93611
5. The name and last known address of the judgment debtor or person whose property is subject to the right to attach order are *(specify)*:
   FRESNO ROCK TACO, LLC, ZONE SPORTS CENTER, 7650 N. PALM AVENUE, SUITE 105, FRESNO, CA 93711
6. The amount required to satisfy the judgment creditor's money judgment or to secure the amount to be secured by the attachment at the time this notice of lien is filed is
   $ 1,214
7. The lien created by this notice attaches to any cause of action of the person named in item 5 that is the subject of this action or proceeding and to that person's rights to money or property under any judgment subsequently procured in this action or proceeding.
8. No compromise, dismissal, settlement, or satisfaction of this action or proceeding or any of the rights of the person named in item 5 to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of that person, and that person may not enforce any rights to money or property under any judgment procured in this action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied:
   a  the prior approval by order of the court in this action or proceeding has been obtained;
   b. the written consent of the person named in item 4 has been obtained or that person has released the lien; or
   c. the money judgment of the person named in item 4 has been satisfied.

**NOTICE** The person named in item 5 may claim an exemption for all or any portion of the money or property within 30 days after receiving notice of the creation of the lien.  The exemption is waived if it is not claimed in time.

Date: FEBRUARY 4, 2016
KRISTI M. COSTA, ESQ.
(TYPE OR PRINT NAME)

▶ *(signature)*
(SIGNATURE OF LIEN CLAIMANT OR ATTORNEY)

Form Approved by the
Judicial Council of California
AT-180, EJ-185 [New January 1, 1985]
Optional Form

**NOTICE OF LIEN**
(Attachment - Enforcement of Judgment)

Legal Solutions Plus

CCP 491.410, 708.410

RICHARD J. KERN, 083485
KRISTI M. COSTA, 276415
**PARKER, KERN, NARD & WENZEL**
7112 N. Fresno Street, Suite 300
Fresno, California 93720
Telephone: (559) 449-2558
Facsimile: (559) 449-2564

Attorneys for: Defendants, ALEX COSTA; MAD DUCK VENTURES, LLC
(erroneously sued herein as MAD DUCK, LLC)

FILED
FEB -5 2015
FRESNO COUNTY SUPERIOR COURT
By_____ DEPT. 501

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF FRESNO

| | |
|---|---|
| MILTON BARBIS; HOWARD YOUNG; FRESNO ROCK TACO, LLC; ZONE SPORTS CENTER, LLC; FINE IRISHMAN, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ALEX COSTA; MAD DUCK LLC; and DOES 1 to 100, <br><br> Defendants. | Case No.: 14CECG02683 <br><br> [PROPOSED] ORDER SUSTAINING DEFENDANTS' DEMURRER TO FIRST AMENDED COMPLAINT AND ORDER AND JUDGMENT OF DISMISSAL <br><br> DATE: January 27, 2015 <br> TIME: 3:30 p.m. <br> DEPT: 503 <br><br> Trial Date: March 28, 2016 |

The matter of BARBIS et al. v. COSTA et al. came on for hearing on January 27, 2015. Appearing for Plaintiffs was Paul Smith II, Esq. and appearing for Defendants was Richard J. Kern, Esq. The matter was briefed, argued and submitted. The Court having taken the matter under submission adopted the Tentative Ruling, a copy of which is attached as "Exhibit A" herein.

Wherefore the Court after consideration of the arguments of counsel and a consideration of the Points and Authorities of both Plaintiff and Defendant IT IS HEREBY ADJUDGED AND ORDERED that:

///

///

1) The Demurrer of Defendants ALEX COSTA and MAD DUCK VENTURES, LLC to the First Amended Complaint is granted without leave to amend as more fully set forth in the attached Tentative Ruling, and

2) JUDGMENT is entered against Plaintiffs FRESNO ROCK TACO, LLC; ZONE SPORTS CENTER, LLC on all causes of action set forth in the First Amended Complaint, herein.

Dated: _Feb. 5_, 2015

_____
JUDGE OF THE SUPERIOR COURT

COSTS ADDED TO JUDGEMENT IN THE AMOUNT OF

$ 1,214.00
Tamara L. Beard  Superior Court Clerk    MAY - 4 2015

By _____    _____
        Deputy                              Dated

2

# EXHIBIT A

03

## Tentative Ruling

Re:  **Barbis v. Costa**
Case No. 14 CE CG 02683

Hearing Date:  January 27th, 2015 (Dept. 501)

Motion:  Defendants' General and Special Demurrer to First Amended Complaint

**Tentative Ruling:**

   To sustain the demurrer to the entire first amended complaint for failure to state facts sufficient to constitute a cause of action, without leave to amend. (Code Civ. Proc. § 430.10, subd. (e).) Also, the first amended complaint is uncertain to the extent that plaintiffs Barbis, Young and Fine Irishman are listed as plaintiffs in the caption, but none of the causes of action are brought on their behalf. (Code Civ. Proc. § 430.10, subd. (f).)

   Defendants shall submit to this court, within seven days of service of the minute order, an ex parte application dismissing the action as to the demurring defendants.

**Explanation:**

   **Demurrer Based on Statutes of Limitation:** It appears that all of the causes of action are barred by the statutes of limitation. The first three causes of action all seek to allege intentional interference with prospective economic relations. There is a two-year statute of limitation with regard to these claims under Code of Civil Procedure section 339, subdivision (1). However, the cause of action is not deemed to have accrued until the plaintiff discovers the loss or damage. (Code Civ. Proc. § 339, subd. (1).)

   "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof – when, simply put, he at least 'suspects ... that someone has done something wrong' to him, 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.' He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. He has reason to suspect when he has 'notice or information of circumstances to put a reasonable person on inquiry'; he need not know the 'specific "facts" necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place–he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can

and 'file suit' if he does." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397-98, quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)

Furthermore, "plaintiff may discover, or have reason to discover, the cause of action even if he does not suspect, or have reason to suspect, the identity of the defendant. That is because the identity of the defendant is not an element of any cause of action. It follows that failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does." (*Norgart, supra*, at 399, internal citations omitted.) An unknown defendant can always be discovered and added to the action later through a Doe amendment. (*Ibid.*) As long as the plaintiff knows the identity of at least one defendant, he must proceed against that defendant and add the other defendants later as needed. (*Ibid.*)

Here, it is clear that plaintiffs knew of the facts underlying their causes of action for intentional interference, as well as the identity of at least one of the potential defendants, more than two years before they filed the present complaint. The first and second causes of action allege that Costa and TMD informed Red Head that Young was having an extramarital affair with an employee of FRT, as well as that FRT, Barbis and Young had "done illegal business practices." (FAC, ¶¶ 79, 86.) Red Head used this information to threaten Young with exposure unless Young induced FRT to settle the lawsuit between Red Head and Young. (*Id.* at ¶¶ 79, 88.) Red Head sent a letter to FRT in February of 2009, threatening to expose Young unless FRT settled the case. (*Id.* at ¶ 34.)

However, plaintiffs allege that they were unaware the Costa had initiated the false statements until "recently." (*Id.* at ¶ 35.) They allege that, in an unrelated case, Costa was questioned in a deposition under oath on January 11th, 2011, and he denied making any statements of fact regarding FRT, ZSC, or their investors, owners, or lenders. (*Id.* at ¶¶ 38, 40.) Plaintiffs allege that they had no idea that Costa and TMD lied under oath until they saw the transcript of Costa's interview with detectives, which was provided to them in February of 2013. (*Id.* at ¶ 58.) Costa also contradicted his deposition when he testified at trial in the unrelated action of *ZSC v. National Surety Company* in August of 2014. (*Id.* at ¶¶ 59, 62.)

Yet plaintiffs' allegations that they only recently learned of Costa's statements against them are inconsistent with their own complaint filed in the related action of *Zone Sports Center v. Brown*, Fresno County case number 10 CE CG 04071. (See defendants' Request for Judicial Notice, Exhibit A. The court intends to take judicial notice of the previously filed complaint under Evidence Code section 452, subdivision (d) as an official court record.) In the complaint filed by plaintiffs against Roger Brown on November 22nd, 2010, plaintiffs allege that Brown made the same false statements about Young having an affair with one of FRT's employees. (Complaint in *ZSC v. Brown*, ¶ 41.) They also allege that Hagar's attorneys threatened to expose Young if he did not induce FRT to settle the lawsuit with Red Head. (*Id.* at ¶ 42.)

Thus, the plaintiffs' own previously filed complaint shows that they were aware of the facts underlying their intentional interference claims by no later than November of 2010, more than two years before the present suit was filed. While plaintiffs contend that they did not know that Costa was involved in making the false statements, they did know that at least one other defendant, Roger Brown, had made the statements. They also knew the other facts underlying their claims. The fact that they might not have known of Costa's involvement does not mean that their claim did not accrue until they discovered Costa's true role. Once they were on notice of the basic facts underlying their claims and the identity of at least one potential defendant, they had a duty to file suit and conduct discovery to determine if anyone else was involved. (*Norgart, supra*, 21 Cal. 4th at 399.) In fact, plaintiffs did file suit against Brown, and they could have added Costa in place of a Doe defendant once they conducted discovery and determined that he might have interfered with their business relationships. However, they failed to do so within two years of their claims accruing, so their first two claims for intentional interference are now time-barred.

The third cause of action is also based on an intentional interference theory. However, the third cause of action is based on the allegation that Costa and TMD made false statements to "multiple third parties" that some televisions and computer monitors reported stolen by FRT and ZSC had not actually been stolen, and instead had been given to painting contractors in lieu of paychecks. (FAC, ¶ 95.) The third parties then reported these statements to FRT and ZSC's insurer, which refused to pay plaintiffs' insurance claims as a result. (*Id.* at ¶¶ 96, 98.) Costa also repeated his statements to the insurer. (*Id.* at ¶ 97.)

Again, plaintiffs deny that they knew until February of 2013 that Costa had made these statements. (*Id.* at ¶ 58.) They point to the fact that Costa testified under oath in January of 2011 that he did not make any such statements, and that he only repeated statements made by Roger Brown. (*Id.* at ¶¶ 41-49.) However, if plaintiffs knew in January of 2011 that Costa was repeating Brown's false statements about the stolen TV's, then they were on notice of the facts underlying their interference claim, as well as the fact that Costa was involved. Regardless of whether Costa merely repeated what Brown told him, he was still potentially liable for interfering with the insurance company's contract with plaintiffs. Thus, plaintiffs own allegations contradict their claim that they had no reason to suspect that Costa had made the statements until February of 2013.

Also, in their prior complaint against Roger Brown, plaintiffs alleged that Brown had made the false statements about the stolen televisions when he spoke with an investigator from the Department of Insurance. (Complaint in *Zone Sports Center v. Brown*, ¶ 50.) The investigator then repeated these statements to Fireman's Fund and The Hartford, the insurance carriers for plaintiffs. (*Id.* at ¶ 51.) The insurers refused to pay plaintiffs' claims as a result. (*Id.* at ¶ 52.) Thus, by no later than November 22nd, 2010, plaintiffs were aware of the facts underlying their third cause of action, as well as at least one potential

defendant. Consequently, their claim accrued no later than November 22nd, 2010, and their third cause of action is time-barred.

The fourth, fifth and sixth causes of action all allege fraud, and thus they are subject to a three-year statute of limitations. (Code Civ. Proc. § 338, subd. (d).) However, the cause of action does not accrue until the plaintiff discovers the facts constituting the fraud. (Ibid.)

"[T]he sole issue is whether at that time there had been discovery by plaintiff of the facts constituting the fraud. This does not require that the aggrieved party know the exact manner in which his injury was effected, nor the identities of all parties who may have played a role therein." (Teitelbaum v. Borders (1962) 206 Cal.App.2d 634, 638-639, internal citation omitted.)

The fourth cause of action again alleges that Costa and TMD made false statements about the stolen TV's which caused the insurance company to deny plaintiffs' insurance claims. (FAC, ¶¶ 104-106.) However, as discussed above, plaintiffs were aware of the facts underlying the fraud claim since at least November 22nd, 2010, since they filed an action against Brown on that date based on the same allegations. (Complaint in Zone Sports Center v. Brown, ¶¶ 50-52.)

Also, while plaintiffs claim that they did not know that Costa was the one who made the false statements until February of 2013, their ignorance of Costa's involvement did not toll the statute since they were already aware of the basic facts underlying the claim, and they knew the identity of at least one potential defendant by November of 2010. (Teitelbaum v. Borders, supra, 206 Cal.App.2d at 638-639.) Furthermore, they allege that Costa admitted in his deposition in January of 2011 that he repeated the false statements made by Brown regarding the stolen TV's. (FAC, ¶ 49.) Thus, plaintiffs cannot deny that they knew of the facts underlying their fraud claim, or that Costa might have made some of the false statements. Consequently, the statute of limitations ran on their claim prior to the filing of the present complaint in September of 2014.

The fifth and sixth causes of action attempt to state claims for fraud based on the allegation that Costa and TMD told Hagar about the alleged affair between Young and an FRT employee, as well as other unspecified illegal business practices, and Hagar used this information to coerce Young into pressuring FRT to settle the Red Head lawsuit. (FAC, ¶¶ 110, 1111, 116-118.) Again, as discussed above, the plaintiffs already knew the facts underlying these claims in 2010 when they filed their case against Roger Brown. The Brown case was based on the same alleged false statements. (Complaint in Zone Sports Center v. Brown, ¶¶ 41, 42.) Thus, the plaintiffs' claims based on the allegedly false statements accrued no later than November 22nd, 2010, and their claims are now time-barred.

**Demurrer for Failure to State Facts Sufficient to Constitute a Cause of Action:** As discussed above, the first and second causes of action both attempt

to allege claims for intentional interference with prospective economic advantage arising out of Costa's and Mad Duck's alleged statement to Hagar that Young was having an affair with an employee of FRT, which Hagar allegedly used to coerce Young into pressuring FRT to settle the lawsuit with Hagar. (FAC, ¶¶ 36, 37.) However, these allegations fail to state sufficient facts to support a cause of action for intentional interference with prospective economic advantage.

The essential elements of a claim of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant. (*Blank v. Kirwan* (1985) 39 Cal. 3d 311, 330.)

Here, plaintiffs allege that Costa's statement was intended to interfere with the relationship between FRT and Red Head, and also between FRT and Young. However, plaintiffs do not allege that there was any existing contractual or economic relationship between FRT and Red Head that carried the probability of future economic benefit to plaintiffs. In fact, plaintiffs admit in their complaint that Red Head had already sued FRT for breach of contract and trademark infringement in December of 2008. (FAC, ¶ 32.) "Hagar and Red Head Inc. were attempting to terminate their licensing agreement with FRT." (*Ibid.*) The complaint filed in federal court by Red Head against FRT also shows that Red Head had sued FRT for, among other things, breach of contract and trademark infringement. (Request for Judicial Notice, Exhibit C, Complaint filed in Federal District Court in *Red Head v. Fresno Rock Taco, LLC*. The court intends to take judicial notice of the federal court complaint under Evidence Code section 452, subdivision (d).) Costa admitted under oath in his deposition on January 11th, 2011 that he was aware of the contractual relationship between Hagar, Red Head and FRT. (*Id.* at ¶ 38.)

Thus, while plaintiffs allege there was an existing contractual relationship between Red Head, Hagar and FRT, and that Costa was aware of this relationship when he testified at his deposition, there are no facts alleged in the complaint that tend to show that plaintiffs had any probability of a future economic benefit from the relationship. Indeed, since Red Head was already suing FRT for breach of contract and trademark infringement, it appears highly unlikely that FRT or the other plaintiffs were ever going to obtain any future economic benefit from their relationship with Red Head. Therefore, the first cause of action fails to allege an essential element of the intentional interference claim.

The second cause of action does appear to allege an existing economic relationship with some probability of future economic benefit to FRT, since it alleges that Young was a "key lender" to FRT, and that Costa's statement was

intended to interfere with Young's relationship with FRT. (FAC, ¶¶ 87, 89.) However, both the first and second causes of action fail to allege that defendant's statement caused any actual interference with the economic relationship with either Red Head or Young. As discussed above, the only facts alleged in the complaint regarding Red Head's relationship with FRT show that Red Head was suing FRT for breach of contract and trademark infringement, so it does not appear that there was any likelihood of a future economic benefit to FRT from that relationship. Thus, the first cause of action fails to allege facts showing that FRT's damages were proximately caused by Costa's statement.

Also, the second cause of action never alleges that Young stopped lending FRT money as a proximate result of Costa's statement, or that there as any other actual interference with the relationship between Young and FRT. Plaintiffs merely allege in conclusory fashion that plaintiff FRT was harmed as a result of the acts of defendant. (FAC, ¶ 90.) There are no facts to support the conclusion that defendant's statement caused harm to plaintiffs' relationship with Young.

Nor are there any facts alleged in the first or second causes of action that would support the plaintiffs' claim that they suffered monetary harm. The first cause of action appears to be alleging that Costa's statement was used by Hagar to coerce Young into inducing FRT to settle the lawsuit with Hagar. (FAC, ¶¶ 79-81.) However, there is no allegation that FRT actually settled the lawsuit with Hagar, or that, if there was a settlement, the settlement was less favorable to FRT than if FRT had proceeded to trial in the case. Assuming that there was a settlement, the terms of the settlement itself are not disclosed, nor is it even clear that FRT had to pay money or give up valuable legal rights as part of the settlement. Nor are there any facts alleged that would suggest that FRT would have been likely to obtain a better result if it had not settled. Therefore, the first cause of action fails to allege any facts showing FRT or the other plaintiffs suffered actual harm from the alleged interference.

Likewise, the second cause of action alleges that Costa's statement caused plaintiffs monetary harm, apparently because it interfered with Young's relationship with FRT, but there is no allegation that Young terminated his relationship with FRT or stopped lending FRT money as a result of the statements. It is completely unclear from the allegations of the complaint how FRT's relationship with Young was harmed by Costa's statements. (FAC, ¶¶ 89, 90.) Therefore, the second cause of action fails to allege the essential element of damages. As a result, the court intends to sustain the demurrer to the first and second causes of action for failure to allege facts sufficient to constitute a cause of action.

However, the third cause of action does allege sufficient facts to support a claim for intentional interference with prospective economic advantage. The third cause of action is based on the allegation that Costa told "multiple third parties" that some televisions, computers, lights, and other property that FRT and Zone Sports Center had reported stolen were not actually stolen, but had been

given by FRT to painting contractors in lieu of paychecks. (FAC, ¶ 95.) "People" then reported these statements to National Surety, the insurance carrier for plaintiffs. (Id. at ¶ 96.) Costa also repeated his statements to National Surety representatives. (Id. at ¶ 97.) As a result of Costa's statements, National Surety refused to pay plaintiffs' insurance claim. (Id. at ¶ 98.) Plaintiffs suffered monetary harm as a result. (Id. at ¶ 99.)

Also, plaintiffs have now alleged that Costa was aware of the fact that FRT and ZSC had an insurance claim pending regarding the stolen TV's, and that he knew the false information he had given was going to be used to deny the insurance claims. (FAC, ¶ 57 b.) He also accused FRT and ZSC of committing felonies by making false insurance claims. (Id. at ¶ 57 q, r.) While plaintiffs do not allege that Costa was aware that National Surety was the plaintiffs' insurer, they do at least allege that he was aware that plaintiffs had made an insurance claim regarding the stolen TV's and that his false statements would be used to deny the claim. Therefore, plaintiffs have alleged sufficient facts to support their claim for interference with prospective economic advantage. Nevertheless, plaintiffs' claim is still barred by the statute of limitations, as discussed above, so the claim still fails to state a cause of action.

The fourth cause of action for fraud also fails to state facts sufficient to constitute a valid cause of action. "The essential allegations of an action for fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage." (Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal. App. 3d 104, 109, internal citation omitted.)

"Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made." (Ibid.)

"This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" (Stansfield v. Starkey (1990) 220 Cal. App. 3d 59, 73, internal citation omitted.)

Moreover, to the extent plaintiffs are seeking to state a claim for fraud against Mad Duck, LLC, plaintiffs must allege additional specific facts. "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (Tarmann v. State Farm Mutual Ins. Co. (1991) 2 Cal.App.4th 153, 157, internal citations omitted.)

Here, plaintiffs fail to allege any facts showing when, where, and by what means the alleged misrepresentation was tendered. Plaintiffs again rely on the alleged statement by Costa that the televisions and other property reported stolen by FRT had actually been given to the painters in lieu of paychecks. (FAC,

¶ 104.) These "people" then told National Surety about the statements, which as a result refused to pay plaintiffs' insurance claim. (Id. at ¶¶ 105, 106.) Costa and TMD also allegedly repeated their false statements directly to National Surety's representatives. (Id. at ¶ 97.) However, plaintiffs do not allege any specific details about when the statements were made or how they were tendered. Plaintiffs have now included a long list of third parties to whom Costa allegedly made the false statements, most of whom are not named. (Id. at ¶ 77 a-o.) On the other hand, there are a few names of third parties now included in the complaint, so plaintiffs have alleged at least some of the persons to whom the statements were made.

More importantly, plaintiffs never allege that Costa made any false statements to them, or that they justifiably relied on the truth of the statements. In order to state a claim for fraud, the plaintiff must allege that the defendant made a false statement to the plaintiff, and that the plaintiff then reasonably relied on the statement to his damage. Under Civil Code 1709, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Thus, "[a] party is liable for intentional misrepresentation if (1) the defendant represented **to plaintiff** that an important fact was true; (2) that representation was false; (3) the defendant knew the representation was false when the defendant made it, or made it recklessly and without regard for its truth; (4) the defendant **intended the plaintiff to rely on the representation;** (5) **the plaintiff did reasonably rely on the representation;** (6) **the plaintiff was harmed;** (7) **the plaintiff's reliance** on defendant's representation was a substantial factor in causing the harm to the plaintiff." (Shum v. Intel Corp., C.A.Fed. (Cal.) 2010, 633 F.3d 1067, 1082, internal citations omitted, emphasis added.)

Under certain circumstances, misrepresentations made to third parties may also be actionable, but usually only if the defendant knows that the misrepresentation is going to be conveyed by the third party to the plaintiff, or where the third party is an agent of the plaintiff. (Lewis v. McClure (1932) 127 Cal.App. 439, 447; Rest. 2d Torts, § 533.) "As the Restatement puts it: 'The maker of a fraudulent misrepresentation is subject to liability ... to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct...'" (Varwig v. Anderson-Behel Porsche/Audi, Inc. (1977) 74 Cal. App. 3d 578, 581, quoting Rest. 2d of Torts, § 533.)

Here, the plaintiffs fail to allege that defendant made any false statement to them, or that they reasonably relied on the statement to change their position, thus causing them damage. They do not even allege that the statement was made to a third party who was their agent, or that the statement was conveyed to them by a third party and they relied upon it. Plaintiffs instead allege that Costa made a false statement to third parties, who then conveyed the statement to the plaintiff's insurance company, which in turn used the

statement to deny their claim. (FAC, ¶¶ 104, 105.) These allegations do not show that defendant ever misled the plaintiffs to their damage. In fact, there is nothing in the complaint that indicates that plaintiffs were even aware of the false statement when it was made, or that they ever relied on the statement. To the contrary, plaintiffs allege that they vigorously denied the truth of the statement, which indicates that they were not deceived. (FAC, ¶ 104.) The fact that the *insurer* may have been deceived by the statement does not show that plaintiffs were misled. Therefore, plaintiffs have not alleged sufficient facts to support their fourth cause of action for fraud.

The fifth and sixth causes of action also fail to state facts sufficient to constitute valid fraud claims. Both of the causes of action are based on Costa's alleged statement to Hagar that Young was having an affair with an employee of FRT, which was "a complete fabrication made solely to induce Hagar to threaten Young with exposure unless Young induced FRT to settle the lawsuit." (FAC, ¶¶ 110, 116.) Plaintiffs allege that the statement was made for the purpose of interfering with the contractual relationship between Red Head and FRT, as well as the relationship between Young, ZSC and FRT. (*Id.* at ¶¶ 112, 119.) Plaintiffs suffered "monetary harm" as a result. (*Id.* at ¶¶ 113, 120.)

However, the plaintiffs have again failed to allege any facts to show that defendants made a misrepresentation of fact to them, that they reasonably relied on the representation, or that they suffered harm as a result of changing their position in reliance on the representation. Plaintiffs only allege that defendant made a misrepresentation to Hagar, not directly to plaintiffs or their agents. Nor is there any allegation that plaintiffs believed that the statement was true. Also, there is no allegation that plaintiffs justifiably relied on the representation, or that they were harmed as a result of their reliance. Given that the representation was about Young's own personal conduct, it seems unlikely that he would have been misled about whether he had actually engaged in an affair.

In addition, plaintiffs do not allege any facts showing that they suffered any actual harm from the statement. At most, they allege that Young was coerced by Hagar's attorneys into pressuring FRT to settle the lawsuit with Hagar and Red Head, although it is not even clearly alleged that any settlement occurred. (FAC, ¶¶ 110, 111, 116, 118.) Even assuming that there was a settlement, there is no allegation that the settlement was adverse to FRT, or that FRT would have been likely to obtain a better result if there had been no settlement. Thus, plaintiffs have failed to allege facts to support the essential element of damages, as well as facts showing that there was a misrepresentation to plaintiffs, or that plaintiffs relied on the representation. Consequently, the court intends to sustain the demurrer to the fifth and sixth causes of action.

**Demurrer for Uncertainty:** Defendants also demur to the entire complaint on the ground of uncertainty, in that none of the causes of action are expressly brought on behalf of plaintiffs Milton Barbis, Howard Young and Fine Irishman,

LLC, even though they are named as plaintiffs in the introduction of the complaint. It is true that the complaint is uncertain and ambiguous, as Barbis, Young and Fine Irishman are listed as plaintiffs, but none of the causes of action are brought on their behalf. The causes of action are only specifically brought on behalf of the plaintiffs' various companies, Fresno Rock Taco and Zone Sports Center. It is unclear why the other plaintiffs have even been named in the complaint if they are not parties to any of the specific causes of action. Indeed, plaintiffs now concede that Barbis, Young and Fine Irishman were added to the FAC by accident, and they claim they will be dismissed soon. However, no dismissal has been filed yet, so the court intends to sustain the demurrer for uncertainty as to plaintiffs Barbis, Young and Fine Irishman.

**Leave to Amend:** Finally, the court intends to deny leave to amend the complaint. "Generally, it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. It is the plaintiff's burden to show either the trial court or the reviewing court how the complaint can be amended to state a cause of action. 'Leave to amend is properly denied if the facts and nature of plaintiff's claim are clear and under the substantive law, no liability exists or where it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiffs cannot state a cause of action.'" (*Titus v. Canyon Lake Property Owners Assn.* (2004) 118 Cal.App.4th 906, 917, internal citations omitted.)

Here, it does not appear that plaintiffs will be able to cure the defects in their complaint, as all of their claims are barred by the statute of limitations. Also, plaintiffs have failed to explain how they can cure the defects in their complaint. Therefore, the court intends to deny leave to amend the complaint.

Pursuant to CRC 3.1312 and CCP §1019.5(a), no further written order is necessary. The minute order adopting this tentative ruling will serve as the order of the court and service by the clerk will constitute notice of the order.

Tentative Ruling Issued By: _____AMS_____ on __1/26/15__.
                                (Judge's Initials)                (Date)