**Douglas V. Thornton, Bar #154956**
**Robert W. Branch, Bar #154963**
**William E. McComas, Bar # 261640**
**THORNTON LAW GROUP, P.C.**
**1725 North Fine Avenue**
**Fresno, California  93727-1616**
**Telephone (559) 400-8999**
**Facsimile (559) 492-3385**

Attorney for: Plaintiffs ZONE SPORTS CENTER, LLC
and CLAIRE BARBIS

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESNO ROCK TACO, LLC, a California limited liability corporation, ZONE SPORTS CENTER, LLC, a California limited liability corporation; THE FINE IRISHMAN, LLC, a California limited liability corporation, HEIDI BARBIS, an individual, MILTON PETER BARBIS, an individual; HEIDI BARBIS as guardian at litem for CLAIRE BARBIS, a minor; <br><br> Plaintiff(s), <br> v. <br><br> BEN RODRIGUEZ, an individual, BRENDAN RHAMES, an individual, GEORGEANNE WHITE, an individual, THE CITY OF FRESNO, a California municipality; and DOES 1-100 inclusively <br><br> Defendant(s). | **Case No.: 1:11-cv-00622-SKO** <br><br> **JOINT PRETRIAL CONFERENCE STATEMENT** <br><br> Date:  June 23, 2016 <br> Time:  2:00 p.m. <br> Courtroom:  7 <br> Judge:  The Honorable Sheila K. Oberto <br><br> Trial Date:  September 13, 2016 <br> Action Filed:  April 16, 2011 |

Pursuant to Local Rule 281(a)(2), the Parties respectfully submit this Joint Pretrial Conference Statement:

## 1. **JURISDICTION – VENUE**

Jurisdiction is predicated upon 28 United States Code section 1331 and 28 United States Code section 1343, and the Eastern District of California is the proper venue pursuant to 28 U.S.C. §1391(b).

00041512.v1

**2. JURY**

Plaintiffs demanded a jury trial in their Complaint, and Defendant demanded trial by jury in their Answer.

**3. UNDISPUTED FACTS**

a.      Detective Benjamin Rodriguez has been an investigator with the Department of Insurance, Fraud Division, since October, 2007.

b.      On May 27, 2009, Detective Rodriguez applied for a warrant to search the following locations: (1) 2536 W. Stuart Avenue, Fresno, CA 93711; (2) 3950 N. Cedar Avenue, Fresno, CA 93711; (3) 4020 N. Cedar Avenue, Fresno, CA 93711; and (4) 4000 N. Cedar, Fresno, CA 93711.

c.      In May 2009, 2536 W. Stuart Avenue, Fresno, CA 93711 was a private home where Milton Barbis, Heidi Barbis and Claire Barbis lived.

d.      In May 2009, 3950 N. Cedar Avenue, Fresno, CA 93711 was the location of former nightclubs owned and operated by Fresno Rock Taco, LLC at Granite Park, including Cabo Wabo and Memphis Blues.

e.      In May 2009, 4020 N. Cedar Avenue, Fresno, CA 93711, was the location of The Public House, a bar/restaurant owned and operated by The Fine Irishman, LLC at Granite Park.

f.      In May 2009, 4000 N. Cedar, Fresno, CA 93711 was the address of a storage building located adjacent to athletic fields at Granite Park.

g.      On May 27, 2009, a Fresno County Superior Court judge approved the warrant.

h.      On May 28, 2009, the search warrant was executed at all four locations.

i.      At the time of the search, Fresno Rock Taco, LLC ("**FRT**") was wholly owned by Milton Barbis.

j.      At the time of the search, The Fine Irishman, LLC ("**TFI**") was wholly owned by John Benjamin.

k.      Sphere Properties owns 89.7% of Zone Sports Center, LLC ("**Zone**").

l.      Granite Park Investors ("**Granite**") owns the remaining 10.21 % of Zone.

00041512.v1

m.      Milton Barbis ("**Barbis**") owns 22% of Sphere Properties.

n.      John Benjamin ("**Benjamin**") owns 16.6% of Granite Park Investors.

o.      Howard Young ("**Young**") owns 12% of Granite Park Investors.

**4.   UNDISPUTED LEGAL ISSUES AND DISPUTED LEGAL ISSUES**

a.      **Undisputed Issues for Trial.**

1.      Whether or not Zone has standing to claim a Fourth Amendment violation as to the subject warrant or any of the searches made pursuant to it.

ii.     Whether or not Zone had a reasonable expectation of privacy in any of the locations searched pursuant to the warrant.

iii.    Whether or not any property belonging to plaintiff Zone was seized in the searches.

2.      Whether or not Mr. Rodriguez ("**Rodriguez**") deliberately or recklessly made false statements or omissions in his affidavit of probable cause that were material to the finding of probable cause for the warrant executed in the disputed searches.

3.      Whether or not the warrant provides probable cause for the subject searches.

4.      Whether or not the search exceeded the scope of the warrant as to plaintiff Zone at the three locations other than the Barbis residence.

5.      Whether or not Rodriguez is entitled to qualified immunity for the warrant and the searches.

6.      Whether there are circumstances justifying punitive damages.

b.      **Plaintiffs' Additional Issues for Trial.**

1.      Whether or not the search exceeded the scope of the warrant as to plaintiffs Zone and Claire Elise Barbis ("**Claire**") at the Barbis residence.

2.      Whether Claire had a reasonable expectation of privacy in her home and in her bedroom.

3.      Whether the search exceeded the scope of the warrant as to Claire.

00041512.v1

4.      Whether or not Rodriguez had probable cause to obtain a search warrant because as Affiant he deliberately and/or recklessly provided false information in the application for the search warrant and omitted factual information of which he had knowledge that was material to the issue of whether the informants relied on were credible and whether the information they provided was credible, including, but not limited to, an expressed strongly held bias against Barbis and the Zone, which false information and omission of information were material to finding Rodriguez had probable cause.

5.      Whether Rodriguez used false information from confidential informants to convince the magistrate that he had probable cause to obtain a search warrant from confidential informants that he did not know, without verifying any of the information they gave him and not doing any independent investigation to verify the allegations of the informants.

6.      Whether Rodriguez destroyed evidence pertaining to the affidavit.

7.      Whether Rodriguez withheld evidence that weighed against finding probable cause.

8.      Whether Rodriguez misrepresented the evidence.

9.      Whether Rodriguez misrepresented the statements made by purported witnesses.

10.     Whether Rodriguez manufactured the evidence as represented to the court in obtaining the search warrant through the affidavit.

11.     Whether or not Rodriguez violated the law by not giving Plaintiffs a copy of the search warrant as prescribed and required under the holding in *US. v. Gantt,* 179 F.3d 782 (9th Cir. 1999).

12.     Whether the collateral source rule is applicable to this matter.

c.      **Defendant's Additional Issues for Trial.**

1.      Whether any Fourth Amendment violation to plaintiff Zone or Claire Barbis caused any consequential damages beyond the injury of the search or seizure made pursuant to the subject warrant.

00041512.v1

**4A.  DISPUTED FACTS.**

     **a.**    **Plaintiffs' Disputed Facts.**

        1.    That the business office of Zone was located at 2536 West Stuart, Fresno, California 93711.

        2.    That Zone is not the parent company of any of the other targets of the Search Warrant.

        3.    That all of the individuals that Rodriguez questioned to provide factual support for the Statement of Probable Cause were disgruntled employees with a bias towards Barbis and any entity that he was affiliated with.

        4.    That the criminal investigation of Zone has been closed due to the fact that Rodriguez never found any evidence to prosecute Zone with a crime.

        5.    That the criminal investigation of FRT has been closed due to the fact that Rodriguez never found any evidence to prosecute FRT with a crime.

        6.    That the criminal investigation of TFI has been closed due to the fact that Rodriguez never found any evidence to prosecute TFI with a crime.

        7.    That the criminal investigation of High Speed Development, LLC ("**HSD**") has been closed due to the fact that Rodriguez never found any evidence to prosecute HSD with a crime.

        8.    That the criminal investigation of ECCO Food and Entertainment Group, LLC ("**ECCO**") has been closed due to the fact that Rodriguez never found any evidence to prosecute ECCO with a crime.

        9.    Rodriguez publicized the contents of the Search Warrant to the general public and news agencies.

     **b.**    **Defendant's Disputed Facts.**

        1.    On March 2, 2009, Rodriguez was asked to assist Fresno City Police ("**FPD**") Detective Brendan Rhames ("**Rhames**") who was investigating theft claims from businesses at Granite Park.

00041512.v1

1     2.     In May 2009, TFI was leasing the space for the Public House from
2    Tommy Tarlton, who owned the building where the restaurant was located.  (Benjamin Depo,
3    p.28 – 31).

4     3.     In May, 2009, the Zone's business office address was 1044 E. Herndon
5    Ave, Ste 106, Fresno, CA 93720**.**

6     4.     The Zone's business office was at 1044 E. Herndon Ave, Ste 106,
7    Fresno, CA 93720 was not included in the search.

8    **5.  <u>DISPUTED EVIDENTIARY ISSUES</u>**

9    Plaintiffs will move in limine to, *inter alia*, exclude evidence of or from other prior or
10   pending litigation.

11   Defendants will move in limine to exclude:

12    a.     Any expert testimony on any issue by Plaintiffs, their agents or employees, or by
13   any expert witnesses retained by them.  On November 14, 2011, this Court issued a scheduling
14   order in this case.  Said order specified that:

> 15  The parties are directed to disclose all expert witnesses, in writing, on or before
> 16  11/9/2012, and to disclose all rebuttal experts on or before 12/10/2012. The
> written designation of retained and non-retained experts shall **be made pursuant**
> 17  **to Fed. R. Civ. P. Rule 26(a)(2), (A), (B) and (C) and shall include all**
> **information required thereunder.** Failure to designate experts in compliance
> 18  with this order may result in the Court excluding the testimony or other evidence
> offered through such experts that are not disclosed pursuant to this order.[1]

19   On December 4, 2015, Zone moved for leave to amend the scheduling order and/or the pretrial
20   order to allow it to designate expert testimony.  (ECF 145).  On January 19, 2016 this Court
21   issued an order denying Zone's motion.  (ECF 157).

22    To date, the parties have not disclosed <u>any</u> expert witnesses.  Accordingly, with the
23   exception of Rodriguez's or Rhames' opinions as to whether they believed at the time of the
24   warrant that a crime had been committed based on their pre-warrant investigation findings,
25   plaintiff's should be precluded from admitting any opinion evidence concerning <u>any</u> issue,
26   including, but not limited to, the amount of monetary damages allegedly incurred by
27   Rodriguez's actions pertaining to the disputed searches.

28

---

[1]  Scheduling Order, 3:7-12 (Doc. 38).

00041512.v1

b.    Any Court or jury finding as to liability in *Fresno Rock Taco, LLC v. National Surety Corporation*, USDC-ED Case No. 1:11-CV-00845-SKO except to show potential double recovery of damages in a Rule 50 or other motion.

### 6.  SPECIAL FACTUAL INFORMATION IN CERTAIN ACTIONS.

a.    **Plaintiffs' Statement of the Case.**

1.    **Core Facts**

On March 2, 2009 a former disgruntled employee of Barbis named Alex Costa ("**Costa**") met with Rodriguez with Rhames. Costa informed Rodriguez that he was a former disgruntled employee of Barbis. Barbis was the managing member of Zone which was a real estate development company that was developing a retail, office and sport complex called Granite Park. During the meeting Rhames informed Rodriguez that not only was Costa disgruntled but he had a "hard on" for Barbis because Barbis embarrassed Costa in public. Costa added that he has gone to "great lengths" to get Barbis…. Costa added that he "was working against Barbis" and that his goal was to bring Barbis' businesses …"to a grinding halt." Costa then informs Rodriguez that he believes businesses in Granite Park have submitted a false claim to their insurance company and also violated employee payroll rules. Rodriguez asked Costa about the other witnesses that Costa would bring to him to verify what Costa was telling Rodriguez. Costa. Costa told him of other employees that had been fired by Barbis that were also disgruntled and would corroborate his statements.

Over the next two months, Rodriguez met with six or seven other people, all of which Costa told him were also former disgruntled or fired employees. Rodriguez met with Roger Brown ("**Brown**"), who was fired for stealing and told never to return to the site. Costa told Rodriguez that Brown "Hates" Barbis. Rodriguez used his testimony without verifying his statements or disclosing to the judge that Brown hated Barbis and was biased against Barbis. Although Rodriguez taped each interview, he claims that the tapes have been destroyed. On or about May 27, 2009, Rodriguez obtained a search warrant to search and seize property belonging to among other businesses, the Zone. On May 28, 2009, law enforcement officers from multiple agencies charge into Barbis' home where his wife and four (4) year old daughter

00041512.v1

are getting ready for school and work. The officers' charged into the home with guns raised, yelling at Barbis to sit down, yelling at the back of the house, at Barbis' wife Heidi who is getting out of the shower, that they are going back there and Barbis' daughter, Claire is in the dining room terrified and in tears. Officers search the entire Barbis home and seize all of the financial and business records belonging to the Zone.

Rodriguez arranges for a press conference and the search and seizure are reported to the Fresno Bee and local television news stations. Rodriguez reported to the news agencies that the Zone was guilty of committing felonies.

As the result on the raid, restaurant tenants of the Zone went out of business. The Zone's future tenants with signed leases put their plans on hold. And the Zone's existing lender called its loan and foreclosed on the properties. The Zone's President, Barbis had a mental breakdown and was adjudged disabled by the State of California. The Zone's new lenders that had committed monies to the Granite Park development either put their loans on hold or cancelled them all together. The Zone's reputation was destroyed.

After Rodriguez released the search warrant it was discovered that there was no accusation of wrongdoing against the Zone – only that the search warrant erroneously stated that the Zone was the parent company of other companies that were wrongfully accused of felonies in the search warrant. These other companies were actually either tenants of the Zone or had no business connection with the Zone.

Rodriguez made up that fact and wrote in the search warrant; "The Zone Sports Center, LLC is the parent company of multiple businesses including ECCO Food and Entertainment, LLC, The Fine Irishman, LLC doing business as The Public House, Fresno Rock Taco, LLC doing business as Cabo Wabo Cantina, now known as Memphis Blues; and High Speed development, LLC." The truth is that the Zone is not the parent company of any business and Rodriguez just made that up so he could raid the business. Under sworn testimony, he admitted that he never verified this fact even though he swore to it and signed the affidavit under penalty of perjury.

////

00041512.v1

**b.      Defendant's Statement of the Case**.

1.      **Core Facts.**

On March 2, 2009, Rodriguez, a fraud investigator for the California Department of Insurance, was asked to assist Rhames who was investigating theft claims from businesses at Granite Park, a commercial real estate development combining athletic fields and retail, restaurant, bar and other businesses.  Rhames had initially investigated a claim by Barbis that fencing worth $200,000.00 owned by Granite Park's developers had been stolen in early February, 2009.  After viewing the site and interviewing the fencing contractor, Rhames believed that the claim was fraudulent, and that the allegedly stolen fencing material had actually been reconfigured and reused in different areas of Granite Park.

In February, 2009, Barbis also reported the theft of 19 televisions, two computers, several stage lights, and liquor from the premises of the former Cabo Wabo nightclub located at Granite Park.  Based on his investigation, which included conversations with an informant named Costa, Rhames believed that the Cabo Wabo theft claim was also fraudulent and that businesses controlled by Barbis and his associates were engaging in illegal business practices, including insurance fraud, in order to keep afloat their financially ailing businesses at Granite Park.

Rodriguez conducted a further detailed investigation.  Based on that investigation and the information from Rhames' investigation, he developed the opinion that Barbis, Benjamin and Young, the masterminds of the Granite Park development, had committed felonies. The three participated in the ownership or management of a variety of LLCs that some or all of them created to develop Granite Park and to own and operate businesses there.  These included plaintiff Zone which apparently developed some or all of the property and served as landlord for buildings it owned.  Fresno Rock Taco, LLC leased space in one of the buildings at Granite Park for a nightclub, Cabo Wabo, a Sammy Hagar nightclub concept which closed following a lawsuit by Hagar's company, Red Head, Inc.  The Fine Irishman, LLC operated The Public House, a bar/restaurant at Granite Park.

/ / / /

00041512.v1

Rodriguez believed that Barbis, Benjamin and Young, in operating the various LLC's at Granite Park, had committed felony crimes involving insurance fraud for the theft claims, workers' compensation premium fraud by under-reporting employee payroll, workers' compensation fraud by denying benefits to their employees and by failing to report work-related employee injuries to the insurance carriers.  Rodriguez also concluded that the three had committed payroll tax evasion.

On May 27, 2009, Rodriguez applied for a search warrant to search four locations in order to obtain further evidence of those crimes:  Milton Barbis's residence, the Public House location at Granite Park, the location of the former Cabo Wabo nightclub at Granite Park, and a storage shed adjacent to the athletic fields at Granite Park.   The court approved the warrant the same day, and it was executed the next day, on May 28, 2009.

The only remaining plaintiffs, Zone and Claire, contend that Rodriguez violated their Fourth Amendment rights by falsifying information in his affidavit in order to obtain the warrant.  Zone also claims that the officers executing the searches exceeded the scope of the warrant.

## 2.    Procedural History.

The First Amended Complaint in this matter named the following plaintiffs:  Fresno Rock Taco, LLC; Zone Sports Center, LLC; The Fine Irishman, LLC; Milton Barbis; Heidi Barbis; and Heidi Barbis as guardian ad litem for Claire Barbis, a minor.   Plaintiff Claire Barbis was only three years old at the time of the search of the Barbis residence.

On November 1, 2011, this Court dismissed both Barbis and Heidi Barbis , without prejudice, on the grounds that their claims were judicially estopped owing to their failure to disclose them in bankruptcy proceedings.[2]  Subsequently, Rodriguez, Rhames and the City of Fresno settled those claims with the bankruptcy trustee.  Accordingly any claims by Barbis or Heidi Barbis and any share of their claims held by the LLC entities have now been settled.

/ / / /

/ / / /

---

[2]  Memorandum Decision and Order Re Defendants' Motion for Reconsideration (Doc. 35).

00041512.v1

On March 6, 2013 this Court granted summary judgment to co-defendants Rhames and City of Fresno and entered judgment in their favor and against Plaintiffs.[3]   In doing so, the Court found that, as a matter of law, plaintiffs Fresno Rock Taco, LLC and The Fine Irishman, LLC are both judicially estopped from asserting their claims in this case due to a failure by their sole owners to disclose the claims in bankruptcy proceedings.[4]

In granting summary judgment to Rhames and the City of Fresno, this Court made the following findings:

(1)      That plaintiff minor Claire was never seized during the search of the Barbis residence and thus her Fourth Amendment rights were not violated by the search.[5]

(2)      That the scope of the search of the Barbis residence did not exceed the scope of the warrant and therefore did not violate Claire's Fourth Amendment rights.[6]

(3)      That three statements attributed to Rhames in the affidavit in support of the search warrant concerning information from Alex Costa were not material to the finding of probable cause:  (1) that Cabo Wabo had only four 42-inch televisions and not nineteen; (2) that some of the televisions that were reported stolen were given to painters as payment for their services; and (3) that Barbis made comments that he would hide equipment in storage so the equipment would not get repossessed.[7]

(4)      That Claire's claims of violation of her due process rights through illegal search and confinement are governed by the Fourth, not the Fourteenth Amendment.[8]

Plaintiffs filed a notice of appeal concerning the judgment on City's and Rhames' Motion for Summary Judgment.  (ECF 99).  The Court then stayed the case on August 15,

---

[3] Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment (Doc 64) and Judgment in a Civil Case (Doc 65).

[4]  Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment, 5:6-6:2 (Doc 64).

[5] Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment, 6:21-8:1 (Doc. 64).

[6] Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment, 9:14-11:2 (Doc. 64).

[7] Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment, 8:2-9:13 (Doc. 64).

[8] Order on Defendants Brendan Rhames' and the City of Fresno's Motion for Summary Judgment, 8:2-9:13 (Doc. 64).

00041512.v1

2013, pending resolution of Plaintiffs' appeal.  (ECF 105).   The parties completed appellate briefing on March 17, 2014.  (ECF 154-1).  Subsequently, Plaintiffs' counsel, Richard Hamlish, moved to withdraw as counsel on October 21, 2014.

Plaintiffs substituted their present attorney, Douglas Thornton, in the appeal on August 26, 2015.  (ECF 154-1).  The Ninth Circuit Court of Appeals then granted Plaintiffs' motion to dismiss their appeal on October 19, 2015.  (*Id*.)

After the stay was lifted, Plaintiffs indicated on the Joint Status Report that they intended to request leave to amend their First Amended Complaint to add claims under California law and also to disclose a damages expert.  (ECF 145).  In its November 12, 2015 Minute Order (ECF 147), this Court allowed the parties until December 4, 2015 to file any "motions regarding discovery or amendment of the pleadings."  Plaintiffs moved for leave to disclose the damages expert but did not move for leave to amend their First Amended Complaint.  (ECF 150).  This Court denied that motion.  (ECF 157).

### 3.   Remaining Parties.

Plaintiffs agree that through the law of the case and the doctrine of issue preclusion, based on the previous findings of this Court, the only remaining plaintiffs in this matter are the Zone and Claire.[9]

### 7.  <u>RELIEF SOUGHT</u>

Plaintiffs seek compensatory monetary damages for personal injury, loss of personal property, business income loss, the stigma of damaged reputation and the loss of a business venture. Plaintiffs also seek punitive damages and their attorney's fees.

Defendant seeks judgment in his favor and costs of suit.

/ / / /

/ / / /

/ / / /

/ / / /

---

[9]   See Plaintiffs' Motion to Amend Scheduling Order, ECF 150, 7:19-20 ("The remaining parties to the action are Plaintiffs Zone Sprots Center, LLC and Claire Barbis and Defendant Ben Rodriguez.")

00041512.v1

**8. <u>POINTS OF LAW</u>**

    **a.    Plaintiffs' Position.**

    1.    Zone has a reasonable expectation of privacy in its books and records when the books and records are kept in an office in a file cabinet, desk drawers and on computers **and in each of the locations searched pursuant to the search warrant.**

    2.    Claire has a reasonable expectation of privacy in her home.

    3.    Contrary to Defendant's argument, many items of evidence belonging to the Zone were seized by Rodriguez yet the Zone had no employees and made no insurance claim which is subject to this matter.

    4.    Defendant's conduct was so egregious as to invoke punitive damages. Defendant knowingly and willfully violated Plaintiffs' Constitutional rights.

    5.    Rodriguez is not entitled to qualified immunity. "[G]overnmental employees are not entitled to qualified immunity on judicial deception claims." *Chism v. Washington,* 661 F.3d 380, 393 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1916 (2012). Rather, cases from the Ninth Circuit "effectively intertwine the qualified immunity question (1) whether a reasonable officer should have known that he acted in violation of a plaintiff's constitutional rights with (2) the substantive recklessness or dishonesty question." *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. 2002).

    6.    The issue of whether the officer acted recklessly and/or dishonestly is one of fact for the trier of fact. *United States v. Roberts*, 747 F.2d 537, 545-46 (9th Cir. 1984). "To survive summary judgment on a claim of judicial deception, a §1983 plaintiff need not establish specific intent to deceive the issuing court. See *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1124 (9th Cir. 1997). "Rather, the plaintiff must: (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a "substantial showing" that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *see Ewing v. City of Stockton,* 588 F.3d 1218, 1223-24 (9th Cir. 2009); *accord Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. 2002); *Liston v. County of*

00041512.v1

**Joint Pretrial Conference Statement**

*Riverside,* 120 F.3d 965, 973-74 (9th Cir. 1997). "If these two requirements are met, the matter must go to trial." *Bravo v. City of Santa Maria,* 665 F.3d, at 1083.

Defendant chose not to make any motion for summary judgment and absent any determination as to the two prong test set forth in *Bravo, supra,* the issue must go to the jury. The time for requesting summary adjudication of any issue has expired and defendant cannot, at this time, circumvent the procedures.

7.      "The basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). "[D]amages for violations of constitutional rights are determined according to principles derived from the common law of torts." *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005). Thus, compensatory damages for constitutional torts may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S.299, 307, 91 L.Ed.2d 249, 106 S.Ct. 2537 (1986).

**b.      Defendant's Position.**

i.      Law of the Case and Issue Preclusion.

The doctrine of the law of the case limits relitigation of an issue once it has been decided. (*Moore's Federal Practice,* Civil, Chapter 134 Stare Decisis, Law of the Case and Judicial Estoppel, § 134.20.)  The law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages. (*Id.*) The Supreme Court has defined the law of the case as a doctrine that " '... posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' " *Id.; Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816(1988) (law of the case protects against agitation of settled issues, citing *Arizona v. California,* 460 U.S. 605, 618 (1983); *Cohen v. Brown Univ.,* 101 F.3d 155, 167 (1st Cir. 1996*)* ("The law of the case doctrine

00041512.v1

precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided.").

The discretion of a court to review earlier decisions should be exercised sparingly so as not to undermine the salutory policy of finality that underlies the rule. *Lathan v. Brinegar*, 506 F.2d 677, 691 (9th Cir. 1974) (en banc); *United States v. Fullard-Leo*, 156 F.2d 756, 757 (9th Cir. 1946. Decisions made by a federal district court during the course of litigation establish the law of the case. *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (decision should govern same issues in subsequent stages of same case). The law of the case doctrine does not apply if a motion for summary judgment is *denied* because the denial does not conclusively resolve any legal issue or find any fact. (*Moore's Federal Practice,* Civil, Chapter 56 Summary Judgment, § 56.121, citing to *Mortimer v. Baca,* 594 F.3d 714, 720 (9th Cir. 2010) (" 'law of the case' does not apply to issues or claims that were not actually decided.).

The doctrine of collateral estoppel, or issue preclusion, bars relitigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits. *Grieve v. Tamerin,* 269 F. 3d 149, 153 (2nd Cir. 2001).

Application of the doctrine of issue preclusion relieves parties of the cost and vexation of multiple lawsuits, prevents inconsistent decisions, encourages reliance on adjudication by minimizing the possibility of inconsistent decisions, and conserves judicial resources. *Allen v. McCurry,* 449 U.S. 90 (1980*)*. The doctrine has dual purpose of preventing relitigation of identical issues and promoting judicial economy by avoiding superfluous litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

        ii.   Judicial Deception - *Franks v. Delaware*, 438 U.S. 154 (1978).

Plaintiffs claiming that judicial deception was employed to obtain a search warrant must prove that defendant deliberately or recklessly made false statements or omissions that were material to a finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119,

00041512.v1

1126 (9th Cir. 2002).  Whether an alleged false statement or omission is material is an issue of law.  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).

A plaintiff challenging the veracity of an affidavit must prove that the affiant's material allegations consisted of intentional falsehoods or reckless disregard for the truth. "Allegations of negligence or innocent mistake are insufficient."  *United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1985) (citing  *Franks v. Delaware*, 438 U.S. 154 (1978)).  To prove reckless disregard for the truth, a plaintiff challenging an affidavit must prove that the affiant "in fact entertained serious doubts as to the truth of his allegations." Because states of mind must be proved circumstantially, a fact finder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations. *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001).

> If a party makes a substantial showing of deception, the court must determine the materiality of the allegedly false statements or omissions. *KRL*[*v. Moore*], 384 F.3d [1105] at 1117 [(9th Cir. 2004)]; see also *Butler*, 281 F.3d at 1024 ("Materiality is for the court, state of mind is for the jury.").  If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant. See, e.g., *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir. 2005). If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause. See, e.g., *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir. 1997).
>
> *Ewing v. City of Stockton*, 588 F.3d 1218, 1223-1224 (9th Cir. 2009)

iii.   General 4th Amendment Principles:  Standing.

"'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'"  *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1185-1187 (9th Cir. 2015)(quoting  *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

> "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Id*. at 173 (quoting *Jones v. United States*, 362 U.S. 257, 261 (1960)).  In other words, when police trespass on property to carry out a search**,** a defendant has standing to raise the Fourth Amendment only if it was his person, house, paper, or effect searched.  *Id*.

00041512.v1

1    In *Lyall v. City of Los Angeles*, the Ninth circuit recognized two separate tests for

2    determining Fourth Amendment standing to contest a search or seizure:  1) a test based on

3    whether a search constituted a common law trespass to the plaintiff's property interest, and 2) a

4    reasonable expectation of privacy test.  807 F.3d at 1188 n. 8.  A trespassory search is based on

5    common law trespass theory which is designed to protect "'possessory—not necessarily

6    ownership—interests in land from unlawful interference.'" *Id.* at 1189 (quoting *Smith v. Cap*

7    *Concrete Inc.*, 133 Cal. App. 3d 769, 184 Cal. Rptr. 308, 310 (1982).  "'**The proper plaintiff**

8    **in an action for trespass to real property is the person in actual possession.**'"  *Id.*

9    Moreover, a technical trespass to obtain evidence only becomes a Constitutionally

10   protected "search" if it involves property items specifically enumerated in the Fourth

11   Amendment:  "persons, <u>houses</u>, papers, and effects."  *United States v. Jones*, 132 S. Ct. 945,

12   953 n. 8 (2012)(emphasis added).  Thus, a trespass to an open field on a plaintiff's property

13   adjoining his house did not implicate the Fourth Amendment because it was not included in the

14   curtilage of the house, which would be entitled to Fourth Amendment protection.  *Id.*  Also, in

15   the parlance of the Fourth Amendment, "effects" are limited to personal property, as opposed to

16   real property.  *Oliver v. United States*, 466 U.S. 170, 177 n. 7 (1984).

17   Offices and commercial buildings are not specifically enumerated in the Fourth

18   Amendment.  Therefore, searches and seizures concerning them are governed by the reasonable

19   expectation of privacy test.  *Id.* at 178 n. 8 (see also *Marshall v. Barlow's, Inc.*, 436 U.S. 307,

20   314-315 (1978), *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 355-356 (1977).  A

21   Fourth Amendment right only attaches to searches in areas in where a plaintiff has a legitimate

22   expectation of privacy.  *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  "[C]apacity to claim the

23   protection of the Fourth Amendment depends not upon a property right in the invaded place but

24   upon whether the person who claims the protection of the Amendment has a legitimate

25   expectation of privacy in the invaded place.  *Id.*

26   Obviously, however, a "legitimate" expectation of privacy by definition means
     more than a subjective expectation of not being discovered. A burglar plying his
27   trade in a summer cabin during the off season may have a thoroughly justified
     subjective expectation of privacy, but it is not one which the law recognizes as
28   "legitimate." His presence, in the words of *Jones*, 362 U.S., at 267, is "wrongful";

00041512.v1

his expectation is not "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S., at 361 (Harlan, J., concurring). And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones*, supra, and *Katz*, supra. But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment. No better demonstration of this proposition exists than the decision in *Alderman v. United States*, 394 U.S. 165 (1969), where the Court held that an individual's property interest in his own home was so great as to allow him to object to electronic surveillance of conversations emanating from his home, even though he himself was not a party to the conversations. On the other hand, a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon. See *Katz*, supra, at 351; *Lewis v. United States*, 385 U.S. 206, 210 (1966); *United States v. Lee*, 274 U.S. 559, 563 (1927); *Hester v. United States*, 265 U.S. 57, 58-59 (1924).

*Id.*

Simple ownership or possession are insufficient in and of themselves to automatically confer Fourth Amendment standing to challenge a search or seizure of property unenumerated by the Fourth Amendment. *United States v. Salvucci*, 448 U.S. 83, 91-93 (1980). "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *Id.* at 92.

### 4)   Qualified Immunity.

"Public officials are immune from suit under 42 U. S. C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,'. . .,

00041512.v1

meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)); *Mullenix v. Luna*, 136 S. Ct. 305 (2015).  Specificity of the legal precedent in terms of the specific context "is especially important in the Fourth Amendment context" because it is "'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'"  *Mullenix v. Luna*, 136 S. Ct. 305 at *7 (*quoting Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

"This doctrine 'gives government officials breathing room to make reasonable but mistaken judgments,'" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2083 (quoting *Malley v. Briggs*, 475 U. S. 335, 341 (1986)).  If reasonable minds could differ, under the circumstances, as to whether the behavior was Constitutionally permissible, then qualified immunity is appropriate.  *KRL v. Estate of Moore*, 512 F.3d 1184, 1191 (9th Cir. 2008).

> A defendant will receive qualified immunity if one of two conditions are met. First, immunity will be applied if the plaintiff has not "alleged" or "shown" facts that would make out a constitutional violation. *Pearson* [*v. Callahan*, 555 U.S. 223], at 232 [(2009)]. Second, even if the Plaintiff has shown such a violation, the defendant is entitled to qualified immunity if the constitutional right allegedly violated was not "'clearly established' at the time of defendant's alleged misconduct." *Id.*

*A. D. v. State of Cal. Highway Patrol*, 712 F.3d at 453-454.

The sequence in which to consider the two conditions for qualified immunity is left to the sound discretion of the court.  *Pearson*, 555 U.S., at 236.  However, in determining whether or not qualified immunity applies in a police practices case, it is often beneficial for a court to first decide whether or not the officer's conduct violated the Fourth Amendment "because it 'promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.'"  *Plumhoff*, 134 S. Ct. at 2020.  In the event the court finds a Fourth Amendment violation, it then proceeds to determine whether the right was "clearly established" for qualified immunity purposes.  *Id.*

00041512.v1

1    In qualified immunity cases, "the plaintiff bears the burden of proving that the rights she

2   claims were 'clearly established' at the time of the alleged violation." *Moran v. Washington*,

3   147 F.3d 839, 844 (9th Cir.1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Collins v.*

4   *Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1997) (as amended). **"The doctrine of qualified**

5   **immunity assumes that police officers do not knowingly violate the law. An officer thus is**

6   **presumed to be immune from any damages caused by his constitutional violation."** *Gasho*

7   *v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994)(emphasis added).  "To overcome this

8   presumption, a plaintiff must show that the officer's conduct was 'so egregious that any

9   reasonable person would have recognized a constitutional violation.'" *Id*.

10    The doctrine of qualified immunity would apply in two ways to a *Franks v. Delaware*

11   judicial deception case.  At minimum, when the court is analyzing the warrant for probable

12   cause, without any sections found to be either deliberately or recklessly false, the issue would

13   be whether the presence of probable cause is at least debatable.  *KRL v. Moore*, 384 F.3d 1105,

14   1116-1118 (9th Cir. 2004).  If it is, Det. Rodriguez is entitled to qualified immunity.

15    Qualified immunity also applies for any omissions from or untrue statements included in

16   the warrant through recklessness if it is at least debatable that a reasonable officer could have

17   included them in or omitted them from the warrant under the circumstances.  The doctrine of

18   qualified immunity even applies to claims against prison healthcare providers who are alleged

19   to have violated an inmate patient's Eighth Amendment rights, where liability requires

20   deliberate indifference to a patient's serious medical needs.  *Hamby v. Hammond*, 2016 U.S.

21   App. LEXIS 7894, *13 (9th Cir. Wash. May 2, 2016).  In such cases, to determine whether

22   qualified immunity applies, the court must ask whether, viewing the evidence most favorably to

23   the plaintiff, and given the existing case law at the time, was it "beyond debate" that the

24   defendant prison officials pursued a medically unreasonable course of treatment by denying

25   plaintiff the treatment that he alleges he was due.  *Id*. at *15-*16.

26    Although a plaintiff need not find "a case directly on point, . . . existing precedent
     must have placed the . . . constitutional question beyond debate." *al-Kidd*, 131 S.

27   Ct. at 2083. That is, existing precedent must have "placed beyond debate the
     unconstitutionality of" the officials' actions, as those actions unfolded in the

28   specific context of the case at hand. *Taylor* [*v. Barkes*], 135 S. Ct. [2042] at 2044

00041512.v1

[(2015)].  Hence, a plaintiff must prove that "precedent on the books" at the time the officials acted "would have made clear to [them] that [their actions] violated the Constitution."  *Id*. at 2045.

*Id*. at *11.

### 9.  <u>ABANDONED ISSUES</u>

Plaintiffs deny that they have abandoned any issues. Defendant contends that the Court has narrowed issues through its order granting summary judgment to defendants Brendan Rhames and City of Fresno (Document 64), and by Plaintiffs' dismissal of their appeal of the order granting summary judgment.

### 10. <u>WITNESSES</u>

Please see Plaintiffs' Witness List, attached as Exhibit A-1

Please see Defendant's Witness List attached as Exhibit A-2

### 11. <u>EXHIBITS</u>

Please see Plaintiffs' Exhibit List, attached as Exhibit B-1

Please see Defendant's Exhibit List attached as Exhibit B-2

### 12. <u>DISCOVERY DOCUMENTS</u>

Plaintiffs do not intend to use any discovery documents in their case-in-chief. Plaintiffs plan to use, for purposes of impeachment or for good cause the deposition transcripts of Rodriguez and Rhames and also depositions and trial testimony from related action *Fresno Rock Taco, LLC v. National Surety Corporation*, USDC-ED Case No. 1:11-CV-00845-SKO.

a.  Plaintiffs reserve their rights to use discovery documents for impeachment purposes.

b.  Defendant plans to offer the following:

i.  Plaintiff The Fine Irishman LLC's responses to interrogatories 1, 6, and 12.

ii.  Plaintiff Fresno Rock Taco LLC's responses to interrogatories 1, 6, and 12.

iii.  Plaintiff Zone Sports Center LLC's responses to interrogatories 1, 6, and 12.

00041512.v1

**Joint Pretrial Conference Statement**

1    Defendant reserves the right to offer additional portions of these parties' discovery

2    responses for purposes of impeachment.

3    Defendant also plans to use, for purposes of impeachment or for good cause the

4    deposition transcripts of Howard Young, Milton Barbis, Heidi Barbis, and John Benjamin in

5    this action and also depositions and trial testimony from related action *Fresno Rock Taco, LLC*

6    *v. National Surety Corporation*, USDC-ED Case No. 1:11-CV-00845-SKO.

7    **13. <u>FURTHER DISCOVERY OR MOTIONS</u>**

8    Defendant intends to call Department of Insurance Detectives Robert Palmer and

9    Dennis Petzinger at trial.  Defendant is informed and believes that either or both may be

10   unavailable for trial.  Defendant proposes that the parties be allowed to take video recorded

11   depositions, at Defendant's expense, of these witnesses for use at trial in lieu of live testimony.

12   The depositions would be taken during the months of July or August, 2016 at dates and times

13   agreed upon by the parties.

14   Owing to the age of this case, other witnesses may be unavailable for trial owing to

15   retirement and other reasons.  When such circumstances are discovered when contacting the

16   witnesses before trial, the parties expects to request leave to take video recorded depositions, at

17   their expense, of these witnesses for use at trial in lieu of live testimony.

18   **14. <u>STIPULATIONS</u>**

19   None, to date.

20   **15. <u>AMENDMENTS-DISMISSALS</u>**

21   Plaintiffs may request amendment to the Amended Complaint to include causes of

22   action where the allegations conforms to the proof at trial. Fed. R. Civ.P.15 (b).

23   Defendant's position is that in its November 12, 2015 Minute Order (ECF 147), this

24   Court allowed the parties until December 4, 2015 to file any "motions regarding discovery or

25   amendment of the pleadings."  Plaintiffs did not move to amend their pleadings by that

26   deadline.  Defendant would oppose any further request by Plaintiffs to amend the allegations in

27   their First Amended Complaint.

28   / / / /

00041512.v1

**Joint Pretrial Conference Statement**

**16. SETTLEMENT NEGOTIATIONS**

The parties appeared at a mandatory settlement conference on April 5, 2013. Plaintiffs' counsel, Richard Hamlish, was present, as was defendant Rodriguez's counsel, Stephen C. Pass, Deputy Attorney General, with Eric Weirich, Division Chief of the Department of Insurance, Fraud Division. Also in attendance were Victoria Geary, Michael Goode and Anthony Fortunato representing the State Franchise Tax Board and the Internal Revenue Service. Following negotiations, the parties were unable to resolve the case. The parties have not conducted any other settlement negotiations.

**17. AGREED STATEMENTS**

None.

**18. SEPARATE TRIAL OF ISSUES**

Plaintiffs request an order bifurcating the issues of liability/damages and punitive damages.

Defendant requests trifurcation of trial as to liability and damages as follows:

Phase 1: Standing.  During the first phase of the trial, Plaintiffs must prove they have standing to claim a Fourth Amendment violation from any search or seizure pursuant to the subject warrant.  The Plaintiffs would make an offer of proof to the Court of evidence showing Zone's Fourth Amendment standing.  The jury would decide by special verdict any disputed material facts as to standing.  If there are no disputed facts, the Court would decide the matter on the offers of proof by both sides.  Pursuant to a rule 50 motion, the Court would rule as to what extent, if any, Zone has standing.  In its decision on the motion, the Court will determine what, if any standing either Plaintiffs have for a Fourth Amendment claim and the basis for that standing either in the location of the search or in items seized.  If it determines that Zone does not have standing, then the case would proceed only as to plaintiff Claire Barbis based on the search of the Barbis residence only.  If the Court determines that Zone has standing, any liability and damages would be predicated solely on the sites searched and items seized that serve as a basis for such standing.

/ / / /

00041512.v1

Phase 2:  Liability.  During this phase, Plaintiffs must prove:  1) that Defendant a) deliberately or recklessly; b)  made false statements or omissions  in his Statement of Probable cause supporting the subject warrant; 2)  That there is no probable cause on the face of the warrant; 3)  That Defendant does not have qualified immunity for the subject searches and seizures; and 4)  That circumstances exist for the jury to impose punitive damages.

The jury will decide, by special verdict, any material facts to the issues of whether Defendant deliberately or recklessly made false statements or omissions in the warrant, and whether circumstances exist to impose punitive damages.  Should the jury rule that no such statements or omissions were made, the verdict will be in favor of Defendant and against Plaintiffs.  Should the jury find deliberately or recklessly false statements in the warrant, the Court would then make the following findings of law pursuant to a Rule 50 motion:  1) Whether or not the warrant showed probable cause without the wrongful statements included. If the warrant states sufficient facts to constitute probable cause, then the Court would find in favor of Defendant and against Plaintiffs.  2)  If probable cause is not shown after wrongful portions of the warrant are removed, then the Court must determine whether Defendant is entitled to qualified immunity.  If the Court decides that immunity applies, then the Court would find in favor of Defendant and against Plaintiffs.  3)  If qualified immunity does not apply, then the matter would proceed to the damages phase.

Phase 3:  Damages.  The damages phase would proceed before the jury, limited by the Court's findings to locations and seized items in which each Plaintiff has standing to claim a Fourth Amendment violation.  Evidence pertaining to punitive damages would only proceed if the jury found circumstances to justify such damages in phase 2 of the trial.

**19. IMPARTIAL EXPERTS-LIMITATION OF EXPERTS**

There has never been any disclosure of experts in this matter by either party. Appointment of an impartial expert would not be helpful. Should any party's witnesses be permitted to express any expert opinions, the opposing party reserves the right to re-open discovery to retain and disclose an expert to rebut those opinions.

/ / / /

00041512.v1

1     **20. ATTORNEYS' FEES**

2         Attorney's fees are being sought pursuant to 42 U.S.C. section 1988.

3     **21. TRIAL EXHIBITS**

4         The parties request that the Court retain the exhibits in this matter pending an appeal by

5     any party.

6     **22. MISCELLANEOUS**

7         Defendant expects to request the court to take judicial notice of California statutes set

8     out in the search warrant, and California Penal Code sections 1536 and 1536.5. Defendant also

9     reserves the right to request judicial notice of documents in the Court's file as circumstances

10    during trial require.

11    Dated: June ___, 2016                    KAMALA D. HARRIS
                                               Attorney General of California
12                                             PETER A. MESHOT
                                               Supervising Deputy Attorney General
13
14                                             /s/Stephen C. Pass

15                                             STEPHEN C. PASS
                                               Deputy Attorney General
16                                             *Attorneys for Defendant Benjamin Rodriguez*

17

18    Dated:  June ___, 2016                   THORNTON LAW GROUP, P.C.

19

20                                             By: /s/Douglas V. Thornton

21                                                  Douglas V. Thornton
                                                    Attorneys for Plaintiffs Fresno Rock
22                                                  Taco, LLC, Zone Sports Center, LLC,
                                                    The Fine Irishmen, LLC, Milton
23                                                  Barbis, Claire Barbis and Heidi Barbis

24

25

26

27

28

00041512.v1

# EXHIBIT A-1

**PRETRIAL CONFERENCE STATEMENT**

**PLAINTIFFS' WITNESS LIST**

Claire Barbis contact through Plaintiffs' counsel

Milton Barbis contact through Plaintiffs' counsel

Howard Young contact through Plaintiffs' counsel

John Benjamin contact through Plaintiffs' counsel

Gabriel Zaragoza 936 W. Woodward Ave, Fresno, CA 93706 (559) 761-2706

Brendan Rhames Fresno Police Dept. 2323 Maracopa, Fresno, CA.

Ben Rodriguez California Dept. of Insurance

Manual Marin 212 Mainberry Place, Madera, CA.

Alex Costa 765 West Herdon, Fresno, CA

Roger Brown 148 Trenton Avenue, Findley, Oh. 45840

John Auvenin Contact through Defendant's counsel

Chris Gutilla 6873 North West Avenue, Ste. 101, Fresno, CA.

Rosalin Gutierrez 6873 North West Avenue, Ste. 101, Fresno, CA

Luis Arceo 3090 E. Holmes Ave., Fresno, CA.

Martin Boone 1260 41 st Avenue, Capitola, CA.

Michael Buchbinder Fresno Police Dept. 2323 Maracopa, Fresno, CA

Lynn Weiss 7365 W. Menlo Ave., Fresno, CA 93723

Don Lopez 2273 Roberts Avenue, Clovis, CA. 93611

Jim Muellar 1100 West Shaw Avenue, Fresno, CA. 93711

Hal Bolen contact through Plaintiffs' counsel

Victoria Heinrich 14445 Bulldog, Fresno. CA

Jensen Lee Fresno Police Dept. 2323 Maracopa, Fresno, CA

Randy Pendelton Fresno Police Dept. 2323 Maracopa, Fresno, CA

John Heinrich 14445 Bulldog, Fresno. CA.

Sam Renteria Sanger Fence Co. 1846 Industrial Way, Sanger, CA.

00041512.v1

# EXHIBIT A-1 Continued

**PRETRIAL CONFERENCE STATEMENT**

**PLAINTIFFS' WITNESS LIST**

Casey Thomas 1550 W. Ashlan Avenue, #134, Fresno, CA 93705

James Wilkins contact through Plaintiffs' counsel

Juan Resendez Valley Protective Services 2100 Tulare, Fresno, CA 93721, 559-222-3474

Shannon Banks 1550 W. Ashlan Avenue, #134, Fresno, CA 93705

Daniel Oftedal 7937 North Blackstone Avenue, Fresno, CA. 93711

Peter Kapetian contact through Plaintiffs' counsel

Phil Flanagan 4082 N. Cedar Ave, #104, Fresno, CA 93726, 559-435-0455

John Ferdinadi Milano Restaurants 6729 North Palm Ave., #200, Fresno, CA 93704, 559-432-0399

Paul Binder 9624 Earnwood Place, San Ramon, CA 94583. (925)577-5170.

Mark Abbott 2323 Mariposa Mall, Fresno, CA 93721. (559)621-7000

Sara Borjas 4238 N. Constance, Fresno, CA 93722. (559) 313-9746

Mike Chavera 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900

Ray Cereghino 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Nick Ditto 1824 N. Pamela, Clovis, CA 93619. (559) 790-6601

Mark Driscoll 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Randy Ebner 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900

Kara Harrison 1106 N. Purdue, Clovis, CA 93611. (559)908-3377

Greg Jackson P.O. Box 14219, Lexington, KY 40512. (916) 294-1100

Mark Jorn 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900

Kevin Keogh 651 N. Helm Ave., Fresno, CA 93611. (559)326-6376

Mark Kinsel 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900

Michelle McBroom 1958 Swift Ave, Clovis, CA 93611. (559) 765-6773

Debra Misquez P.O. Box 826880, MIC 43, Sacramento, CA 94280-0001. (916) 813-8845.

Bobby Taul 4334 N. Anna, Fresno, CA 93726. (559)790-3329

Jacob Uribe 2670 E. Nees Ave., #144, Fresno, CA 93720. (559) 287-1506

00041512.v1

# EXHIBIT A-1 Continued

**PRETRIAL CONFERENCE STATEMENT**

**PLAINTIFFS' WITNESS LIST**

Christine Weldon, ABC 3640 E. Ashlan Ave, Fresno, CA 93726 (559) 225-6334

Mike Junio 2525 E. Plymouth Way, Fresno, CA 93720

Kirk Vartanian – 9805 N. Sedona Cir., Fresno, CA 93720

Pino - Unknown

Alan Rourik – 1255 W Shaw Ave #101, Fresno, CA 93711, 559-244-3100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00041512.v1

**Joint Pretrial Conference Statement**

# EXHIBIT A-2

**PRETRIAL CONFERENCE STATEMENT**

**DEFENDANT'S WITNESS LIST**

Defendant Ben Rodriguez

Abbott, Mark - 2323 Mariposa Mall, Fresno, CA 93721.  (559)621-7000.

Auvinen, John - 2995 Prospect Park, Suite 200, Rancho Cordova, CA 95670  (916) 859-3801.

Binder, Paul - 9624 Earnwood Place, San Ramon, CA 94583.  (925)577-5170.

Borjas, Sara -  4238 N. Constance, Fresno, CA 93722. (559) 313-9746.

Brown, Roger – 148 Trenton Ave, Findley, OH 45840. (419)306-2962.

Buchbinder, Michael- 2323 Mariposa Mall, Fresno, CA 93721. (559) -7000.

Chavera, Mike – 1780 E. Bullard, Ste 101, Fresno, CA 93710.  (559) 440-5900.

Cereghino, Ray (retired)– 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Costa, Alex – 885 Robinson, Clovis, CA 93612.  (559)284-6237.

Ditto, Nick- 1824 N. Pamela, Clovis, CA 93619. (559) 790-6601.

Driscoll, Mark (retired)  - 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Ebner, Randy  (retired) - 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Harrison, Kara – 1106 N. Purdue, Clovis, CA 93611.  (559)908-3377.

Harmon, Michael – 3451 Hilray Drive, San Jose, CA 95124.

Jackson, Greg – P.O. Box 14219, Lexington, KY 40512.  (916) 294-1100.

Jorn, Mark  (Detective Sgt-Ret.) 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

Keogh, Kevin – 651 N. Helm Ave., Fresno, CA 93611.  (559)326-6376.

Kinsel, Mark (retired) - 1780 E. Bullard, Ste 101, Fresno, CA 93710. (559) 440-5900.

00041512.v1

Lucero, Rey – Granite State Insurance Company, 70 Pine St., New York, NY 10270. (602) 512-2203.

McBroom (Maloney), Michelle – 1958 Swift Ave, Clovis, CA 93611.  (559) 765-6773.

Misquez, Debra – EDD Investigations (Ret.), P.O. Box 826880, MIC 43, Sacramento, CA 94280-0001. (916) 813-8845.

Montgomery, John – 2200 W. Loop South, Suite #650, Houston, TX 77027.  (713)654-9400.

Palmer, Rob J.-1780 E. Bullard Ste 101, Fresno, CA 93710. (559) 440-5900.

Pensinger, Dennis-  1780 E. Bullard Ste 101, Fresno, CA 93710. (559) 440-5900.

Peters, Ryan – 3701 Kittery Ave, San Ramon, CA 94583.  (925)833-8331.

Pray, Mike – 4254 N. Selland Ave., Fresno, CA 93722. (559) 485-1254.

Rhames, Brendan – 2323 Mariposa Mall, Fresno, CA 93721.  (559)621-7000.

Rhedin, Eric – P.O. Box 3009, Omaha NE 68103. (402) 658-5890.

Smith, Christine-Department of Insurance Auditor.

Shaul, Jerri – 10 River Park Place, Fresno, CA. (559)433-2654.

Taul, Bobby – 4334 N. Anna, Fresno, CA 93726.  (559)790-3329.

Tully, Darrel –  1780 E. Bullard Ste 101, Fresno, CA 93710.  (559) 440-5900

Uribe, Jacob – 2670 E. Nees Ave., #144, Fresno, CA 93720. (559) 287-1506.

Barbis, Heidi

Barbis, Milton

Benjamin, John

Young, Howard

00041512.v1

# EXHIBIT B-1

**PRETRIAL CONFERENCE STATEMENT**

**PLAINTIFFS' EXHIBIT LIST**

| **Exhibit#** | **Description** |
|---|---|
| P-201. | Check to Areco dated 12/27 /2008 |
| P-202. | Email- Gutilla to Barbis dated 1/15/2009 |
| P-203. | Exhibit B-Financial report |
| P-204. | Fresno P.D. Report dated 12/27/2011 |
| P-205. | Zone Revivor dated *5/9/12* |
| P-206. | Letter-Kapetan to Rhames dated 2/27/2011 |
| P-207. | Email-Auvenin to Suelzle/Kaiser dated 3/11/2009-3/12/2009 |
| P-208. | Proof of Loss |
| P-209 | Articles of Incorporation Zone Sports Center LLC. |
| P-210. | Articles of incorporation-Fresno Rock Taco LLC |
| P-210. | List of TV serial numbers undated |
| P-212. | Letter-Rodriguez to ECCO dated 3/25/2009 |
| P-213. | Estimate of CT&S dated 3/27/2009 |
| P-214. | Email-Auvenin to Rodriguez dated 5/01/2009 |
| P-215 | Lease for Cabo Wabo Cantina |
| P-216 | Lease for Public House |
| P-217 | Lease for HN Enterprises-Red |
| P-218 | Lease for JEG Ventures |
| P-218 | Lease for Metal Mark |
| P-219 | Lease for Milano Restaurants |
| P-220 | Lease for Memphis Blues |
| P-221 | Lease for Le Reve |
| P-222 | Verified Complaint in Zone Sports Center, LLC et al v. Brown |
| P-223 | Verified Answer in Zone Sports Center, LLC v. Brown |

00041512.v1

**Joint Pretrial Conference Statement**

1

2

# EXHIBIT B-1 Continued

3

**PRETRIAL CONFERENCE STATEMENT**

4

**PLAINTIFFS' EXHIBIT LIST**

5 | P-224 | Report of Garabedian (Wesson)

6 | P-225 | Defendant Rodriguez' complete case file (as produced in discovery)

7 | P-226 | Audio Recording on Disc of March, 2009 Meeting between Rodriguez, Costa and

8 | | Rhames

9 | P-227 | Transcript of recording of March, 2009 Meeting between Rodriguez, Costa and

10 | | Rhames

11 | P-228 | Search Warrant and Affidavit (32 pages)

12 | P-229 | Internet information

13 | P-230 | Tape interview of Milton Barbis

14 | P-231 | Trial Transcripts from National Surety Action

15 | P-232 | Appraisal of Building F

16 | P-233 | Appraisal of Building E

17 | P-234 | Entire Site Appraisal

18 | P-235 | Appraisal of Proposed Commercial Building and Excess Land

19 | P-236 | Deposition Transcript of Brandon Rhames

20 | P-237 | Deposition Transcript of Howard Young

21 | P-238 | Deposition Transcript of Heidi Barbis

22 | P-239 | Deposition Transcript of Milton Barbis

23 | P-240 | Deposition Transcript of John Benjamin

24 | P-241 | Declaration of Paul Buchbinder

25 | P-242 | Department of Insurance News Briefing

26 | P-243 | Fresno Bee Articles Regarding Granite Park Crimes

27

28

00041512.v1

1

# EXHIBIT B-2

2

**DEFENDANT'S EXHIBIT LIST**

3

| EXHIBIT # | PAGES | DESCRIPTION |
|-----------|-------|-------------|
| A | | Search Warrant and Affidavit |
| B | | Return to Search Warrant |
| C | AG106-3421 | Rodriguez Pre-Search Investigative File[10] |
| D | | Brendan Rhames investigation file (Exhibit 2 to Rhames Deposition). |
| E | | DVD audio of Alex Costa 3/2/2009 interview. |
| F | | CD audio disc of Barbis Residence Search. |
| G | | First Amended Complaint for Damages, USDC-ED (Fresno) Case 1:11-cv-00622 (Document 9). |
| H | | Order and Decision in *Brown vs. High Speed Development, LLC* for wages. |
| I | | Complaint for Damages, USDC-ED (Fresno) 1:10-cv-01833-AWI SMS (Document 1). |
| J | | Declaration of Milton Barbis, USDC-ED (Fresno) Case 1:10-cv-01833-AWI SMS (Document 27-1). |
| K | | Paul Binder interview notes. |
| L | | Roger Brown interview notes. |
| M | | Nick Ditto interview notes. |
| N | | Sara Borjas interview notes. |
| O | | Alex Costa interview notes |
| P | | John Montgomery interview notes |
| Q | | Michelle McBroom interview notes |
| R | | Robert Taul interview notes |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[10]  Defendant expects to further mark multiple sub-exhibits in Exhibit C to facilitate the presentation of evidence at trial.  The sub-exhibits will be marked at the time of the exchange of exhibits.

00041512.v1

**Joint Pretrial Conference Statement**

| | | |
|---|---|---|
| S | | Kevin Keogh interview notes |
| T | | Jacob Uribe interview notes |
| U | | Barbis Bankruptcy Petition |
| V | | Benjamin Bankruptcy Petition |
| W | | Young Bankruptcy Petition |
| X | | Heidi Barbis Decl. (MSJ) |
| Y | | First Amended Complaint, Fresno Superior Court Case # 14 CECG 02683 (Barbis, et al v. Costa) |
| Z | | Complaint, Fresno Superior Court Case # 10 CDCG 04071 (Zone Sports Center v. Brown) |
| AA | | Notice of Lien (Costa), ECF 158—Order Sustaining Demurrer to 1st Am. Complaint (Superior Court Case # 14 CECG 02683 (Barbis, et al v. Costa))and Order and Judgment of Dismissal. |
| BB | | Rodriguez Business Organization Chart. |
| CC | | Rodriguez Bank Account Chart |
| DD | | Rodriguez Repeating Phone Numbers and Address Chart |
| EE[11] | | National Surety Verdict |
| FF[12] | | National Surety Judgment |
| | | |
| | | |
| | | |

Defendant reserves the right to offer additional exhibits for impeachment purposes and for good cause.  These include depositions and trial testimony from related action Fresno Rock Taco, LLC v. National Surety Corporation, USDC-ED Case No. 1:11-CV-00845-SKO.

---

[11]  The use of this exhibit would be limited to show possible double recovery for any damages award in the present case.
[12] The use of this exhibit would be limited to show possible double recovery for any damages award in the present case.

00041512.v1

### CERTIFICATE OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is 1725 N. Fine Avenue, Fresno, California 93717.

On June 16, 2016, I served the document(s) described as: **JOINT PRETRIAL CONFERENCE STATEMENT** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelope(s) and/or package(s) addressed as follows:

**Bruce Daniel Praet**
bpraet@aol.com
csmith@law4cops.com
csherman@law4cops.com

**Victoria C. Geary**
Victoria.geary@boe.ca.gov

**State Board of Equalization**
Victoria.baker@boe.ca.gov

**Peter Anthony Meshot**
Peter.meshot@doj.ca.gov
Tort-ecf@doj.ca.gov
Supattra.straw@doj.ca.gov

**Arthur A. Small, Esq.**
aasmall@arthursmall.com

**Stephen Charles Pass**
Stephen.pass@doj.ca.gov
Tort-ecf@doj.ca.gov
Kelly.yates@doj.ca.gov

Alex Costa
kcosta@pknwlaw.com

Richard J. Kern
rich@pknwlaw.com
bholly@pknwlaw.com

☒   **BY ELECTRONIC MAIL:**   By filing electronically with the U.S. District Court, Eastern Division, and opting to receive service by electronic mail, service of this document is hereby deemed served.

☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 16, 2016, at Fresno, California.

_____/s/ Melanie M. Chacon_____
Melanie M. Chacon

00041512.v1