1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZONE SPORTS CENTER, LLC, a California limited liability corporation; HEIDI BARBIS, as guardian ad litem for CLAIRE BARBIS, a minor, | Case No.  1:11-cv-00622-SKO |
| Plaintiffs, | **ORDER ON PLAINTIFF ZONE SPORTS, LLC'S STANDING UNDER THE FOURTH AMENDMENT** |
| v. | |
| BEN RODRIGUEZ, an individual, | |
| Defendant. | |
| _____/ | |

## I.      INTRODUCTION

Plaintiffs Zone Sports Center, LLC ("Zone") and Claire Barbis, by and through her guardian ad litem Heidi Barbis (collectively, "Plaintiffs"), filed this civil rights suit against Defendant Benjamin Rodriquez ("Defendant") pursuant to 42 U.S.C. § 1983.  At the pretrial conference held June 23, 2016, the Court ordered the parties to brief the issue of whether Zone has standing under the Fourth Amendment as to any of the four properties searched on May 28, 2009, pursuant to a warrant supported by Defendant's affidavit.  For the reason's set forth below, the Court finds that Zone does not have standing under the Fourth Amendment as to any of the four properties.

## II.      BACKGROUND

On May 27, 2009, Defendant, a criminal investigator for the California Department of Insurance Fraud, sought a search warrant for four locations: 3950 N. Cedar Avenue, Fresno, CA 93711, and 4020 N. Cedar Avenue, Fresno, CA 93711(two businesses); 4000 N. Cedar Avenue,

1  Fresno, CA 93711 (a storage building); and 2536 W. Stuart Avenue, Fresno, CA 93711 (the

2  Barbises' family home) (collectively "the Properties").   Defendant believed that the searches

3  would uncover evidence of insurance fraud, various types of workers' compensation fraud, and

4  unemployment insurance code violations.   The warrant was signed by a Superior Court Judge,

5  based upon a Statement of Probable Cause submitted by Defendant.   The Statement of Probable

6  Cause contained information attributed to Detective Rhames, a detective with the Fresno Police

7  Department.   The search warrant sought to seize various pieces of electronic equipment and

8  various types of business records.   On May 28, 2009, at approximately 7:30 a.m., the search

9  warrant was executed at all four locations.   Detective Rhames visited all four locations during the

10  execution of the search warrant.

11                    **III.    PROCEDURAL BACKGROUND**

12         The amended complaint listed the following Plaintiffs: Milton Barbis; Heidi Barbis; their

13  daughter, Claire Barbis; Fresno Rock Taco, LLC; The Fine Irishman, LLC; and Zone Sports

14  Center, LLC.   The claims of Milton and Heidi Barbis, Fresno Rock Taco, and The Fine Irishman

15  were dismissed by this Court because they were not disclosed to the Bankruptcy Court as required

16  by law.   (Docs. 35 (dismissing claims because Barbises had not disclosed their claims on their

17  schedule of assets); 64 (dismissing claims because the LLCs were wholly owned by Milton Barbis

18  and John Benjamin -- individuals who had filed for bankruptcy -- and were not disclosed to the

19  bankruptcy court).)   Zone was not dismissed from the complaint because the Court found a

20  genuine dispute remained as to whether it was judicially estopped from bringing its claims.[1]  (Doc.

21  64, p. 6.)   The Court also dismissed all claims against defendants Detective Rhames and the City

22

---

[1]   The Court found:

23

24         It is undisputed that Sphere Properties owns 89.79% of Zone Sports Center and that Granite Park
       Investors owns the other 10.21%.  (Doc. 58-1, p. 3 ¶ 7, 11).  It is further undisputed that Mr.
       Barbis owns 22% of Sphere Properties and failed to disclose Zone Sports Center's claims to his

25     creditors when he filed for bankruptcy.  It is also undisputed that Mr. Benjamin owns 16.6% of
       Granite Park Investors and Howard Young owns 12% of the company.  It is further undisputed

26     that both Mr. Benjamin and Mr. Young failed to disclose Zone Sports Center's claims to their
       creditors when they filed for bankruptcy.  Although it is undisputed that three of Zone Sports
       Center's owners failed to disclose Zone Sports Center's claims to their creditors when they filed

27     for bankruptcy it is unclear as to who the other investors are and whether they are judicially
       estopped from bringing Zone Sports Center's claims.  Accordingly, Zone Sports Center is not

28     judicially estopped from bringing its claims in the instant action.

1  of Fresno.  (Doc. 64.)  At this time, the only remaining claims in this case are Plaintiff's claims for

2  violation of the Fourth Amendment.

3  Presently before the Court is the issue of whether Zone Sports Center has Fourth

4  Amendment standing as to the Properties searched pursuant to the warrant.

5  ### IV.    RELEVANT LAW

6  Under the Fourth Amendment, "[t]he right of the people to be secure in their persons,

7  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and

8  no Warrants shall issue, but upon probable cause. . . ."  U.S. CONST. amend. IV.  Application of

9  this right "depends on whether the person invoking its protection can claim a justifiable, a

10  reasonable, or a legitimate expectation of privacy that has been invaded by government action."

11  *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks and citations omitted).

12  A person has standing to sue for a violation of this particular "right of the people" only if

13  there has been a violation "as to him," personally.  *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968).

14  In other words, Fourth Amendment standing, unlike Article III standing, "is a matter of

15  substantive [F]ourth [A]mendment law; to say that a party lacks [F]ourth [A]mendment standing is

16  to say that his reasonable expectation of privacy has not been infringed."  *United States v. Taketa*,

17  923 F.2d 665, 669 (9th Cir. 1991).  This follows from the Supreme Court's famous observation

18  that the Fourth Amendment "protects people, not places."  *Katz v. United States*, 389 U.S. 347,

19  351 (1967).

20  To prevail on a Fourth Amendment claim, plaintiffs must allege sufficient facts to show

21  that they had a reasonable expectation of privacy in the object of the search.  A reasonable

22  expectation of privacy exists when: (1) a person "manifest[s] a subjective expectation of privacy in

23  the object of the challenged search"; and (2) "society [is] willing to recognize that expectation as

24  reasonable."  *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Katz v. United States*, 389

25  U.S. 347, 360 (1967) (Harlan, J., concurring)); *see also United States v. McKennon*, 814 F.2d

26  1539, 1543 (11th Cir. 1987) (the subjective prong is a factual inquiry).

27  Plaintiffs must also allege sufficient facts to show that their expectation of privacy was

28  objectively reasonable.  A legitimate expectation of privacy "by definition means more than a

1    subjective expectation of not being discovered." *United States v. Whaley*, 779 F.2d 585, 590 (11th

2    Cir. 1986) (internal quotation omitted).   Determining the legitimacy of a privacy expectation

3    entails a balancing of interests -- no single factor is determinative.   *Oliver*, 466 U.S. at 177.

4    Although there is no "talisman that determines in all cases those privacy expectations that society

5    is prepared to accept as reasonable," *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987), courts may

6    consider "the uses to which the individual has put a location . . . and our societal understanding

7    that certain areas deserve the most scrupulous protection from government invasion," *Oliver v.*

8    *U.S.*, 466 U.S. 170, 178 (1984); *see also McKennon*, 814 F.2d at 1543 (the objective prong is a

9    question of law).

10         "Privacy does not require solitude.  . . . [E]ven 'private' business offices are often subject

11   to the legitimate visits of coworkers, supervisors, and the public, without defeating the expectation

12   of privacy unless the office is 'so open to fellow employees or the public that no expectation of

13   privacy is reasonable.'"   *United States v. Taketa*, 923 F.2d 665, 673 (9th Cir.1991) (quoting

14   *O'Connor*, 480 U.S. at 717-18).

15                              **IV.     DISCUSSION**

16         Defendant contends Zone does not have standing to assert a claim for violation of the

17   Fourth Amendment as to any of the Properties searched pursuant to the warrant.  (Doc. 173.)

18         Zone has conceded it does not have standing to challenge the search of the following

19   properties: **3950 N. Cedar Avenue, Fresno, CA 93711** (Doc. 172, p. 7); **4020 N. Cedar Avenue,**

20   **Fresno, CA 93711** (Doc. 172, p. 7); and **4000 N. Cedar Avenue, Fresno, CA 93711** (Doc. 172,

21   p. 7).

22         Zone contends it has standing to challenge the search of the **2536 W. Stuart Avenue,**

23   **Fresno, CA 9371**.  The Barbises contend that this property is both their personal residence and the

24   location of Zone's business office.  (Doc. 172, pp. 2-3; Doc. 167 (Declaration of Milton Barbis),

25   ¶ 6.)

26    //

27    //

28    //

**A.**     **Milton Barbis Had a Reasonable Expectation of Privacy in His Home  Office at the Stuart Property**

In his declaration submitted in support of Plaintiffs' brief, Milton Barbis attests that "[d]uring the entire existence of [Zone Sports Center] it has not occupied an commercial office space but I have instead maintained its business office [ ] in a spare bedroom that was converted into a home office at my residence which is located at 2536 W. Stuart Avenue in Fresno ('Barbis Home'). The [Zone] Office inside the Barbis Home has remained the same from February 21, 2001 to the present day." (Barbis Decl., ¶ 6.)  The Zone home office "in my Barbis Home consisted of (and still consists of) a computer, desks, 5 filing cabinets, [and] a computer printer/scanner/fax." (*Id.*, ¶ 7.)  Though Zone has never had a telephone "land line" number, it has maintained a "dedicated fax land line" at Milton Barbis's home office. (*Id.*, ¶ 8.)

Milton Barbis further attests that he has been the Manager of Zone at all times since its formation on February 21, 2011, and has been "the sole individual that it is (*sic*) responsible for all company matters, preparing and reviewing financial matters and custody of all financial and business records, organizing company meetings and custody and control over [Zone]'s business office." (Barbis Decl., ¶ 2.)  In his testimony at trial in *Fresno Rock Taco, LLC, et al. v. National Security Corp.*, No. 11-cv-845-SKO, Milton Barbis testified that he was Zone's manager and, to his knowledge, Zone's sole employee and officer. (Doc. 173-2 (Transcript of Trial Testimony of Milton Barbis), p. 122:6-22 (testifying that he was responsible for "all active management" of Zone and that there may have been an investor acting as a secretary of Zone at some point); *but see* Doc. 175 (Supplemental Declaration of Milton Barbis), ¶ 7 (attesting that "Gabriel Zaragoza" was the "only employee" Zone ever had).)

When the search warrant was executed at the Barbis residence on May 28, 2009, Milton Barbis's home office was searched. (Doc. 168 (Declaration of Douglas Thornton), Exhs. B, C, D; Barbis Decl., ¶¶ 14-15.)  The search included the desk, computer, and filing cabinets in Milton Barbis's home office, where some or all of Zone's corporate documents and property was stored. (*Id.*; *see also* Supp. Barbis Decl., ¶ 6 (stating that Zone papers were kept in an individual filing cabinet separate from other entities' papers).)  It is therefore undisputed that Milton Barbis had a

1  cognizable privacy interest over his home office, over which he exercised close control.

2  Defendant has not provided affirmative evidence rebutting Plaintiffs' contentions that Zone was

3  operated and managed by Milton Barbis and run, among other businesses, out of his home office.

4  Even given these findings, however, Zone lacks a cognizable Fourth Amendment interest in the

5  Barbises' home office.

6      "[A] reasonable expectation of privacy does not arise *ex officio,* but must be established

7  with respect to the person in question." *U.S. v. SDI Future Health, Inc.*, 568 F.3d 684, 696 (9th

8  Cir. 2009).[2]  While exclusive use of an office may be sufficient to establish such an interest, it is

9  not necessary. *Id.* at 697.  Therefore, "an employee of a corporation, whether worker or manager,

10 does not, simply by virtue of his status as such, acquire Fourth Amendment standing with respect

11 to company premises.  . . . to be merely a shareholder of a corporation, without more, is also not

12 enough." *Id.* at 696.  Where a small business is involved, the Court's inquiry focuses on the

13 "close control" exercised by any owner-operators over their small business to determine whether a

14 cognizable Fourth Amendment interest exists. *Id.*  (citing *U.S. v. Gonzalez*, 412 F.3d 1102, 1117

15 (9th Cir. 2005), *as amended by* 437 F.3d 854 (2006) (holding that defendants had a "reasonable

16 expectation of privacy" on the premises ". . . because the [defendants] were corporate officers and

17 directors who not only had ownership of the [premises] but also *exercised* full access to the

18 building as well as managerial control over its day-to-day operations") (emphasis added).

19      Here, Milton Barbis took steps to protect his privacy in the Barbises' home office, and

20 personally managed the operation of the home office space on a daily basis.  Were Milton Barbis

21 still a plaintiff in this case, under controlling precedent of this Circuit, *he* would be able to assert

22 standing for Fourth Amendment purposes to challenge the search of his home office, as both an

23 individual and on behalf of the business(es) over which he exerted "close control" as a manager,

24 owner, officer, or director. *See SDI Future Health*, 568 F.3d at 697-98; *Gonzalez*, 412 F.3d at

25 1117.  However, Milton Barbis is *not* a plaintiff in this case.  Therefore, the Court must inquire

26

27  [2]    The Court notes Defendant repeatedly relied on *U.S. v. SDI Future Health, Inc.*, 553 F.3d 1246 (9th Cir. 2009),
despite that this earlier opinion was explicitly amended and superseded on denial of rehearing en banc by *U.S. v. SDI*
28 *Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009).  Such careless  citation to authority, presumably without confirming
that the case remains good law, is not acceptable in this or any other Court.

1  whether Zone can assert such an interest in the absence of any manager, officer, operator, director,

2  shareholder, agent, or other employee.

3  B.      **Zone Did Not Have a Reasonable Expectation of Privacy in the Stuart Property**

4         As an initial matter, Plaintiffs contend the Court has previously found Zone may vindicate

5  its rights in a § 1983 action for damages. (Doc. 172, pp. 4-5.)   The Court, however, only found

6  that the LLC plaintiffs "arguably ha[d] independent standing to bring Section 1983 civil rights

7  claims" (*see* Doc. 35, pp. 10-11).   Plaintiffs further contend the Court may rely upon Zone

8  manager Milton Barbis's standing under the Fourth Amendment to establish a privacy interest by

9  Zone in the Barbises' home office. (Doc. 176, pp. 2-3.)   Plaintiffs, however, provide no authority

10  for this proposition and the Court is unable to find any.

11         As Plaintiffs concede, "Milt[on] Barbis is responsible for maintaining and enforcing the

12  privacy rights of an entity incapable of acting without a human voice."   (*Id.* (arguing that Zone

13  "asserts its rights under the Fourth Amendment through its manager").)   Here, Zone *is acting*

14  *without a human voice* -- manager Milton Barbis has been *dismissed from the case* and no other

15  plaintiff with any form of ownership or employment relationship to Zone remains in the case.   The

16  Court has found no authority to support the position that a business entity can seek redress for

17  violation of the Fourth Amendment without a human agent acting on its behalf.

18         Plaintiffs rely on *G.M. Leasing Corp. v. United States* for the position that a corporate

19  entity may pursue a Fourth Amendment action. (Doc. 172, p. 6.).   *G.M. Leasing,* however, is

20  inapposite. *G.M. Leasing* involved the *warrantless* seizure of various property and documents by

21  the Internal Revenue Service ("IRS") pursuant to statute in partial satisfaction of a *tax levy* against

22  the *individual* owner/operator/*alter ego* of the corporation.   429 U.S. 338 (1977).   The Supreme

23  Court granted certiorari as to whether the IRS agents had violated the corporation's Fourth

24  Amendment rights in conducting the seizure of assets to repay the taxpayer owner/alter ego's tax

25  levy.

26         Here, by contrast, Milton Barbis has repeatedly maintained that he and Zone and all the

27  other businesses with which he is involved are *separate* and *independent* -- Barbis has never

28  //

1  contended that Zone is his alter ego.[3]  The Court will not broaden the scope and applicability of

2  *G.M. Leasing* to find otherwise.

3       Accordingly, the Court finds that Zone lacks standing under the Fourth Amendment and its

4  § 1983 civil rights claim must be dismissed.

5                          **V.       CONCLUSION AND ORDER**

6       In sum, Zone Sports Center, LLC, does not have Fourth Amendment standing as to any of

7  the Properties searched pursuant to the warrant and therefore cannot pursue a claim against

8  Defendant for violation of the Fourth Amendment.  As Zone Sports Center, LLC's only claim

9  remaining in the case against Defendant was its § 1983 civil rights claim for violation of the

10 Fourth Amendment, IT IS HEREBY ORDERED that:

11      1.      Zone Sport Center, LLC, is DISMISSED from the case, and

12      2.      The Clerk of Court is DIRECTED to enter judgment in favor of Defendant and

13              against Plaintiff Zone Sports Center, LLC.

14
   IT IS SO ORDERED.
15

16 Dated:   **July 26, 2016**                          /s/ *Sheila K. Oberto*
17                                              UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27 _____
   [3]     The Court notes that even after being dismissed as an *individual* from the amended complaint for failure to
   disclose this action in his bankruptcy proceeding (*see* Doc. 35), Milton Barbis did not seek amendment to add himself
28 as a plaintiff *on behalf of* any of the LLC plaintiffs or add factual allegations demonstrating that any LLC plaintiff,
   including Zone, was his *alter ego*.